E-FILED; Anne Arundel Circuit Court
Docket: 4/24/2023 12:29 PM; Submission: 4/24/2023 12:29 PM



**EXHIBIT 2**

## IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

| | |
|---|---|
| **MOSES MENDOZA**<br>110 Valley View Avenue<br>Edgewater, MD 21037 | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :     Case No.: C-02-CV-23-000777 |
| **ANNE ARUNDEL COUNTY, MARYLAND**<br><u>Serve on</u>:<br>Gregory J. Swain, County Attorney<br>2660 Riva Road, 4th Floor<br>Annapolis, MD 21401 | : |
| and | : |
| **VANESSA DOS SANTOS**<br>**OFFICER #3444**<br>**Individually and in her Official Capacity as a**<br>**Anne Arundel County Animal Control Officer**<br><u>Serve on</u>:<br>Animal Care & Control<br>411 Maxwell Frye Road<br>Millersville, MD 21108 | : |
| and | : |
| **GLENN JOHNSON**<br>**OFFICER #8715**<br>**Individually and in his Official Capacity as a**<br>**Anne Arundel County Animal Control Officer**<br><u>Serve on</u>:<br>Animal Care & Control<br>411 Maxwell Frye Road<br>Millersville, MD 21108 | : |
| Defendants. | : |

1

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Moses Mendoza, by and through his attorneys, Timothy F. Maloney and Bridget Cardinale and the law firm of Joseph Greenwald & Laake P.A., and sues Defendants Anne Arundel County, Maryland, Vanessa Dos Santos, and Glenn Johnson (collectively, "Defendants"), and claims damages, stating as follows:

## INTRODUCTION

On April 25, 2020, Moses Mendoza, an Air Force veteran and now-former employee of the federal government, was enjoying a day of gardening in his front yard with his children, wife, and 5-month-old puppy.  This peaceful family afternoon was interrupted when Sarah Youngquist, a neighbor and the estranged step-sister of Mr. Mendoza's wife, approached the house with her two Italian Mastiffs.

When Ms. Youngquist and her dogs first came near d the Mendoza home, she cursed at the children without provocation.  She threatened that her large dogs would kill their puppy who briefly approached the Mastiffs while playing with the children on the front yard.  She walked down the road.

On her way back, Ms. Youngquist threatened the Mendoza family again.  Without any provocation, she told Mr. Mendoza that she was "just gonna drop the leash," on her large dogs – which she did.

The Mastiffs charged onto the Mendoza property and began viciously attacking the family's puppy right at Mr. Mendoza's feet with his young children nearby.  Mr. Mendoza had barely any time to act to protect his children, wife, dog and himself.  He used a gardening tool in hands to try to distract the dogs and then to break them apart, making contact with one of the attacking Mastiffs in the process.  Thankfully, Mr. Mendoza's efforts stopped further injury and broke up the fight, and he told Ms. Youngquist to stay off of his property.

2

Ms. Youngquist returned home and later took her dog to the veterinary clinic.  She called the Anne Arundel County police, who, in turn, contacted Anne Arundel County Animal Control. By coincidence or by design, the matter was assigned to Officer Vanessa Dos Santos – who was not only Ms. Youngquist's close friend and former roommate, but also knew the Mastiff since he was a puppy.  Rather than recuse herself as required, she instead asserted as the lead in the investigation. Officer Dos Santos, motivated by personal interest in Ms. Youngquist and the dog she cared for, used her officer position to control the investigation to their advantage, manipulating the evidence and the charging process   She conducted limited interviews with Mr. Mendoza and his wife, refused to view or accept readily available video evidence offered by Mrs. Mendoza, and refused to interview any of the Mendoza children.

Deliberately ignoring the overwhelming evidence, including video of the event, Officer Dos Santos sought criminal charges against Mr. Mendoza, including a felony offense of aggravated cruelty to animals.  However, she recognized that to better ensure the successful prosecution of such charges, she needed to conceal her role in the investigation and application for charges and her clear conflict of interest.  To do so, Officer Dos Santos employed the help of her colleague, Officer Glenn Johnson, who filed an application for the criminal charges she proposed *and* completely omitted all information provided by the Mendoza's.

As intended, the criminal charges, including the felony, were issued against Mr. Mendoza.[1]  Although such charges were dropped as soon as the State saw the exculpatory video evidence that Officer Dos Santos tried to conceal, the damage was already done.

---

[1] Mr. Mendoza was also issued a citation for having an "animal at large," under Anne Arundel County Code § 12-4-905.  Mr. Mendoza solely pled guilty to the citation due to his puppy's first interaction with Ms. Youngquist's dogs. Although Ms. Youngquist also, and intentionally, violated the provision, in addition to committing other offenses, no charges were ever issued against her.

Mr. Mendoza held a high-level security clearance associated with his position with the Department of Homeland Security ("DHS"), which he had held for twenty-four years. Because he was charged with a felony, his employment was suspended and his security clearance investigated. Although Mr. Mendoza denied the false allegations prepared by the defendants in the charging documents, DHS did not deem those denials credible because they conflicted with sworn statements of law enforcement officers, despite their clear falsity. As a result, Mr. Mendoza lost his security clearance and was terminated from his eighteen-year position with DHS. He now cannot gain employment which requires a security clearance.

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to Md. Code, Cts. & Jud. Proc. § 1-501.

2. This Court has jurisdiction over the subject matter and all parties pursuant to Md. Code, Cts. & Jud. Proc. §§ 6-102 through 6-103.

3. Venue is proper pursuant to Md. Code, Cts. & Jud. Proc. § 6-201. All material events occurred in Anne Arundel County, Maryland. Furthermore, the Defendants are employed and/or maintain principal business in Anne Arundel, Maryland.

### NOTICE

4. To the extent that Plaintiff's claims are governed by the notice requirements of the Maryland Tort Claims Act, Md. Code, State Govt. § 12-106, and/or the Local Government Tort Claims Act, Md. Code, Cts. & Jud. Proc. § 6-304, Plaintiff provided such notice on or around September 17, 2021 and again on October 17, 2021.

### PARTIES

5. Plaintiff Moses Mendoza (hereinafter "Mr. Mendoza") is the aggrieved party in this suit and is an adult resident of Anne Arundel County, Maryland.

6.   Defendant Anne Arundel County, Maryland (the "County") is a municipal corporation organized under the provisions of Art. XI-A of the Constitution of Maryland. The County has supervisory authority over and is responsible for the operation of the Anne Arundel County Police Department (the "Police Department"), the primary law enforcement agency of the County, including the Animal Care and Control Agency.

7.   The  Animal Care and Control Agency (hereinafter "Animal Control") is a "section in the Police Department directed by the Chief of Police or otherwise authorized by law to administer and enforce [Article 12 Public Safety].  Anne Arundel County Code § 12-4-101(4). Animal Control Agency officers are charged with the powers necessary to enforce §§ 12-4-101 *et seq.* of the County Code (Title 4 Animal Control), and Md. Criminal Law §§ 10-601 *et seq.* of the State Code.  Anne Arundel County Code § 12-4-302.

8.   The sole office of Anne Arundel County's Animal Control is located at 411 Maxwell Frye Road, Millersville, MD 21108 and open five (5) days per week: for 4.5–5 hours on four of those weekly days, and for 8 hours on one weekly day.

9.   On information of belief, Defendant Vanessa Dos Santos (#3444) ("Officer Dos Santos") is an adult citizen of Maryland.  At the time of the incident, Officer Dos Santos was an Agency officer of Animal Control. At all relevant times hereto, Officer Dos Santos was acting within the scope of her employment with the Animal Matters Commission, the Police Department, and the County as their agent, servant and employee.

10. On information of belief, Defendant Glenn Johnson (#8715) ("Officer Johnson") is an adult citizen of Maryland.  At the time of the incident, Officer Johnson was an Agency officer of Animal Control. At all relevant times hereto, Officer Johnson was acting within the

5

scope of her employment with the Animal Matters Commission, the Police Department, and the County as their agent, servant and employee.

11. The Animal Matters Commission (hereinafter "Animal Control") is an agency within the Police Department, as established by Anne Arundel County Code § 12-4-20.1.

12. At all times relevant to this complaint, Officer Dos Santos and Officer Johnson each acted under color of law, based on their authority as sworn law enforcement officers.

### FACTS COMMON TO ALL COUNTS

13. On April 25, 2020, Plaintiff Moses Mendoza was gardening in the front yard of his home with his wife, Colleen Mendoza, and six (6) minor children.  At the time of the subject incident, the Mendoza family lived at 1805 Glenarm Road, Edgewater, Maryland in Anne Arundel County.

14. At the time of the incident, Mr. Mendoza and Mrs. Mendoza's children were 14, 13, 11, 10, 8, and 7 years old.

15. The Mendoza family's five-month old Weimaraner puppy, "Zoey," was also outside with them on this day from time to time.

16. Mrs. Mendoza's estranged step-sister and then-neighbor, Sarah Youngquist, walked by with her two large dogs, a male named "Dexter" (a/k/a "Dex") and female named "Lexi." Both of Ms. Youngquist's dogs were Cane Corsos, a breed of Mastiff.

17. Ms. Youngquist's dogs had a prior history of aggressive behavior.  Mr. Mendoza and Mrs. Mendoza had previously witnessed the dogs aggressively bark and growl at them and their children, try to bite them through a fence that adjoined their properties, and violently fight each other without any intervention from Ms. Youngquist.  When Mr. and Mrs. Mendoza visited Ms. Youngquist's home, Ms. Youngquist crated both dogs throughout the entire visit due to their bad temperaments.

6

18. On April 25, 2020, at approximately 12:00p.m., Ms. Youngquist walked by the front of the Mendoza home with her dogs. The Mendoza puppy, Zoey, momentarily left the Mendoza property to approach the other dogs until she was called back by her owners.

19. Although Zoey had returned to Mr. Mendoza's property, Ms. Youngquist yelled threats at several of the Mendoza children who were in the front yard at the time, stating that if they didn't get the dog back, her dogs would "fucking kill your dog." At this time, Mr. Mendoza was at the store and Mrs. Mendoza was in the backyard where she was able to hear Ms. Youngquist's threats.

20. Mr. Mendoza's children were frightened by Ms. Youngquist's threat and one of them brought Zoey inside the home.

21. Ms. Youngquist continued to walk with her dogs and left the area.

22. Mr. Mendoza returned from the store and resumed gardening in the front yard with his wife and children.

23. A short while later, Ms. Youngquist and her dogs returned and again stopped outside the front of Mr. Mendoza's property. At this time, Zoey was outside and again approached Ms. Youngquist and the other dogs out of curiosity, but stayed on the Mendoza property.

24. Mr. Mendoza and Mrs. Mendoza called for Zoey to urge her to stay away from Ms. Youngquist and her dogs.

25. Mr. Mendoza asked Ms. Youngquist to leave and keep moving. He called Zoey so that she remained on his property and at his feet.

26. Instead, Ms. Youngquist remained in front of the Mendoza house and her dogs began barking aggressively at Mr. Mendoza and the puppy, Zoey. Ms. Youngquist's large dogs

7

were in threatening postures with their bodies leaning forward, ears flattened back, and teeth showing as they snarled.

27. Ms. Youngquist made another threat, stating "I'm just gonna drop the leash," or words to that effect.

28. Then, suddenly and without warning, Ms. Youngquist followed through with her threat. Ms. Youngquist's dogs charged towards Mr. Mendoza and Zoey, and Ms. Youngquist intentionally released her hold of the dogs' leash, stating that "they will fucking kill her," or words to that effect, as the dogs went after Zoey.

29. The dogs rushed onto Mr. Mendoza's property and started attacking Zoey in his front yard in between the base of a maple tree  and his parked Ford Expedition SUV (the "Expedition"), at least two (2) yards beyond the Mendoza property line.



30. Ms. Youngquist's dogs began aggressively attacking Zoey at Mr. Mendoza's feet, just inches from his body and near his children, including Mr. Mendoza's 8-year-old and 10-year-old who were only 2–3 feet away.

31. One of Mr. Mendoza's children, the 10-year-old, has autism, clinical anxiety, and neurological disorders including Tourette syndrome and sensory processing disorder. Among the symptoms of the child's conditions are sensitivity to loud noises and an impulse to 'freeze' when overstimulated.

32. Mr. Mendoza and Mrs. Mendoza knew that their 10-year-old son would not have the capacity to move or protect himself from the large attacking dogs if necessary.

33. As with typical dogfights, the fight between Ms. Youngquist's attacking dogs and Zoey, attempting to defend herself, was vicious, threatening, and terrifying.  The dogs' movement was erratic, chaotic, and uncontrolled.

34. Mr. Mendoza was in fear for the safety of his children, his wife, himself, and the puppy, Zoey, who was being attacked by two much larger, fully-grown dogs in his front yard. Dex weighed approximately 88 pounds at the time and Ms. Youngquist's other Mastiff was approximately the same size. By contrast, Zoey weighed about twenty (20) pounds.

35. Mrs. Mendoza also feared for her children's safety and told Ms. Youngquist to get her dogs.

36. Instinctively and with no time to think, Mr. Mendoza first tried to stop the attack by banging the pole he already had in his hands on the ground, hoping it would get the dogs' attention.  However, because Mr. Mendoza and the dogs were on the grass of his yard, the pole failed to make a loud sound and the attack continued.

37. After that failed to stop the attack, Mr. Mendoza immediately tried again to break up the continuing attack with the pole in hands. Mr. Mendoza inserted the pole from the side into the middle of the ongoing fight in an attempt to separate the dogs.

38. All three dogs were moving, as they were involved in an aggressive fight at the time, and as a result, the pole incidentally and unintentionally made contact with the head of one of the Cane Corsos, Dex.

39. Both Cane Corsos stopped their attack and immediately returned to the street with Ms. Youngquist.

40. The incident, from the moment Ms. Youngquist's dogs charged onto the Mendoza property to the moment the dogfight was broken up, lasted approximated three (3) seconds.

41. At no time did Dex fall to the ground. Neither Mr. Mendoza nor Mrs. Mendoza observed any injuries or bleeding on Dex.

42. Mr. Mendoza did not intend for the pole to make contact or harm any of the dogs. The pole incidentally came into contact with Dex due to the three dogs' movement as they were enthralled in a vicious fight.

43. Mr. Mendoza's actions prevented Ms. Youngquist's dogs from attacking his family, from seriously injuring his own dog, and from causing harm to himself.

44. Due to Ms. Youngquist's release of her large, aggressive dogs onto Mr. Mendoza's property, each of his six children who witnessed the attack were put at risk of serious bodily harm and made to fear for the safety and wellbeing of themselves, their father, and their family's new dog.

45. After the fight was broken up, Mr. Mendoza told Ms. Youngquist to get off his property.

46. Ms. Youngquist promptly left the area and returned to her home with her dogs.

47. A short while later, Mr. Mendoza and Mrs. Mendoza observed Ms. Youngquist outside with Dex and talking to their neighbor across the street, Sandy Myers, and another man later learned to be Ms. Myers' cousin, Kevin Robey.

48. Ms. Youngquist then took Dex to the Anne Arundel Veterinary Emergency Clinic.

49. Zoey was limping after the attack from Ms. Youngquist's dogs and was taken inside the Mendoza home to recover.

***Officer Dos Santos' Investigation and Reporting***

50. While at the clinic, Ms. Youngquist called the Police Department about what occurred.  At the time of Ms. Youngquist's call to the Police Department, there was no ongoing emergency or exigent circumstances.

51. The Police Department called Animal Control Dispatch and Animal Control assigned the matter to Animal Control Agency Officer Vanessa Dos Santos.

52. As an employee and/or agent of the Anne Arundel County Police Department, Officer Dos Santos is bound by the applicable written directives issued by the Police Department, including the Department Rules.

53. Rule 34 of the Department Rules states:

Responding officers shall not investigate or make arrests in any dispute involving themselves, their relatives, associates, or neighbors, regardless of duty status except to prevent:

1.   Injury or death
2.   A felony or other serious crime from occurring
3.   Destruction of Property
4.   Escape of a person that the member, under normal circumstances, would have arrested.

When involved in such incidents, other than the exceptions listed above, the officer shall:

1.     Request another officer to take action.
2.     Be available to serve as a witness or to assist in an arrest.[2]

54. Further, Anne Arundel County Code § 7-5-107(a)(1) states that "[a]n employee may not intentionally use the prestige of office or public position . . . for that employee's private gain or the gain of another." *See also*, Md. General Provisions Code Ann. § 5-807(a)(1) (requiring each county to enact provisions governing the public ethics of local officials relating to conflicts of interest).

55. Officer Dos Santos knew at the time of her dispatch that the matter involved Ms. Youngquist and that the reported incident occurred on the street on which she formerly resided.

56. At the time of the subject incident, Officer Dos Santos already had a prior personal relationship with Ms. Youngquist for years.  The two lived together for nearly a year in 2016-2017.

57. Officer Dos Santos also had a prior relationship with Ms. Youngquist's dog, Dex, from living at Ms. Youngquist's home during that time.  In fact, Officer Dos Santos had known Dex since he was a puppy.

58. Ms. Youngquist's dog, Dex, has a history of aggressive behavior and/or a propensity to bite or be potentially dangerous to people or other dogs.

---

[2] Anne Arundel County Police Department Written Directive, "Department Rules," Index Code: 302 (Effective date: Feb. 27, 2023), available at https://public.powerdms.com/aac/tree/documents/54 (hereinafter "Police Department Rules").  Further, the County's Law Enforcement Code of Ethics, "adopted as the standard of conduct for sworn officers of the Anne Arundel County Police Department," prohibits officers from "act[ing] officiously or permit[ing] personal feelings, prejudices, animosities, or friendships to influence [their] decisions." Anne Arundel County Police Department Written Directive, "Oath of Office & Code of Ethics," Index Code: 102 (Effective date: Oct. 11, 2016),

59. Dex has attacked and mauled a young girl requiring the child to have emergency medical treatment and cosmetic surgery, including 13 stitches and plastic surgery involving a skin graft.

60. Upon information and belief, Officer Dos Santos knew at the time of the subject incident that Dex had a history of aggressive behavior and/or had shown a propensity for aggressive or violent behavior.

61. Officer Dos Santos knew at the time of the subject incident that both of Ms. Youngquist's dogs were purebred Cane Corsos.

62. Officer Dos Santos knew, or reasonably should have known, that purebred Cane Corsos have aggressive and/or violent tendencies.

63. Officer Dos Santos arrived at the clinic, where multiple Police Department officers were already present, including Officer J. Lewis (Badge #2410).

64. Ms. Youngquist spoke with Officer Dos Santos and other officers about what she alleged occurred.  She reportedly told the officers that a man named Kevin Robey, Jr. gave her his number and had witnessed the whole thing.

65. Ms. Youngquist further told Officer Dos Santos and the other officers that when she first walked by Mr. Mendoza's property, his puppy approached her dogs to try to play with them and was not aggressive.  Ms. Youngquist falsely told them that the second time she walked by, she was on the opposite side of the street and the Mendoza puppy again approached their dogs on the street.  She further lied, stating that her dogs began pulling at their leashes in an attempt to "play" with the puppy, that all three dogs were "acting excited, running in circles and playing," and that she yelled at Mr. and Mrs. Mendoza to get their dog because she was struggling to restrain her own.  Ms. Youngquist told them that Mr. Mendoza approached her, that

13

they yelled at each other, and lied to the officers, stating that Mr. Mendoza then walked back onto his property, picked up a metal pole, charged back, and struck downwards onto Dex's head. She further falsely alleged that Dex immediately fell to the ground bleeding.

66. Ms. Youngquist offered no explanation or motive for why Mr. Mendoza would target Dex and intentionally attack him, particularly if the dogs were harmlessly "running in circles and playing" as she alleged.

67. Officer Dos Santos reportedly asked Ms. Youngquist to email her pictures of the dog's injuries and the veterinarian's medical report to add to her case file, and, despite them already knowing each other personally, provided Ms. Youngquist her business card with her email and phone number.

68. The veterinarian's report, which was later made a part of the case file, shows that Ms. Youngquist also lied to the veterinarian by falsely reporting that, after Dex was struck, he stumbled to the ground and seemed to have difficulty rising again for a few minutes. In reality, Dex never fell to the ground and immediately walked away with Ms. Youngquist and her other dog after he was accidentally struck.

69. Officer Dos Santos intentionally inserted herself as lead of the investigation to limit the evidence obtained and control its outcome in favor of her friend, Ms. Youngquist, and the dog she had known for several years, Dex.

70. While at the clinic, Officer Dos Santos told Officer Lewis that she would handle charging Mr. Mendoza with animal cruelty after speaking with him and getting his side of the story. This was before Officer Dos Santos had even visited the scene of the incident or spoken with any witness other than her friend, Ms. Youngquist, or with any of the eight (8) members of the Mendoza family who witnessed the entire incident.

14

71. Officer Dos Santos and two Police Department officers, Officer Lewis and Officer Huckenberg (Badge #2178), then left the clinic and arrived at Mr. Mendoza's home.

72. Officer Dos Santos told Officer Lewis and Officer Huckenberg that she would take the lead on the investigation, including interviews.

73. Officer Dos Santos interviewed and took statements from Mr. Mendoza and Mrs. Mendoza, which were truthful and consistent with facts of the incident as alleged herein.

74. Officer Dos Santos' interview of Mr. Mendoza, which was captured of his doorbell video, was intentionally brief and calculated to derive as little exculpatory information of him as possible. The entire interview, which was the sole time Officer Dos Santos ever questioned Mr. Mendoza about the incident, was only about four (4) minutes long.

75. During the interview, Mr. Mendoza explained that Ms. Youngquist first threatened his children and demanded that they take Zoey away or else "I'll have my dogs kill your dog." He told Officer Dos Santos that, on Ms. Youngquist's return from her walk, her dogs were antagonistic and so he and Mrs. Mendoza ensured that Zoey stayed on the property. Mr. Mendoza told Officer Dos Santos about Ms. Youngquist's threat to let her dogs loose and then doing so, allowing the dogs to go after Zoey. He explained that he was scared that the dogs would attack his children who were right there and that he used the pole from gardening to try to break it up.

76. Mr. Mendoza told Officer Dos Santos, "I was just trying to break up the fight, for my sake, my kids' sake, keep my kids safe, because they're [Ms. Youngquist's dogs] huge." Mr. Mendoza explained that they were also considering reporting the event because of Ms. Youngquist's threats and intentional release of her dogs onto his property.

15

77. Officer Dos Santos intentionally omitted from her reporting Mr. Mendoza's verbal statements explaining his actions, describing his fear for himself and others, and informing her that he was interested in charges against Ms. Youngquist.

78. Mr. Mendoza clearly stated multiple times that the attack occurred on his property and was "over by the Expedition," and pointed to the area in his front yard.

79. Officer Dos Santos only asked Mr. Mendoza four questions: (a) if he would write a statement of his side of the story; (b) whether his dog was injured in the process; (c) whether anything happened on his property or in the road; and (d) if anyone besides Mrs. Mendoza or his children were present or witnesses.

80. Officer Dos Santos did not ask Mr. Mendoza about his interest in filing a report against Ms. Youngquist or to specify further where the incident occurred.

81. Officer Dos Santos never told Mr. Mendoza what he was being accused of or asked him to explain or respond to Ms. Youngquist's allegation that he intentionally swung down on Dex's head while the dogs were playing in the street.

82. Officer Dos Santos intentionally conducted a similarly brief interview of Mrs. Mendoza.

83. During the interview, Mrs. Mendoza walked with her over to the maple tree and informed Officer Dos Santos that the attack happened in their yard near the tree, pointing to a spot in the yard between the maple tree and the Expedition. Mrs. Mendoza never mentioned the driveway nor the street in her description of where the incident took place to Officer Dos Santos.

84. Importantly, Officer Dos Santos *refused* to review, consider or accept multiple pieces of evidence into her investigation or the file, including a video of the incident and accounts from several witnesses.

16

85. At the time of her investigation, Officer Dos Santos was aware that there were video cameras that potentially captured the incident or other relevant footage to the incident.

86. Officer Dos Santos rang the doorbell with a video camera when arrived to Mr. Mendoza's property and there were multiple yard signs around Mr. Mendoza's property indicating there was a security home monitoring system.

87. Further, Mrs. Mendoza told Officer Dos Santos that the house had a home security monitoring system and offered to show Officer Dos Santos video footage from the multiple cameras since it may have captured the incident and would verify the statements by her and Mr. Mendoza.

88. Officer Dos Santos refused to even view any of the footage and stated that it "would not be necessary right now," or words to that effect.

89. Officer Dos Santos also refused Mrs. Mendoza's offer to speak with any of the six (6) additional witnesses to the incident: the Mendoza children, two of whom were teenagers at the time.  All six of the children witnessed the subject incident and most of them could speak to Ms. Youngquist's threats directed at them on her first pass of the property.

90. Officer Dos Santos also declined to inspect the Mendoza dog, Zoey.  Mrs. Mendoza brought Zoey to the front door, but Officer Dos Santos stayed in the front yard and did not approach or look closely at the puppy.

91. Officer Dos Santos and the other officers also spoke with and took a statement from Ms. Youngquist's proposed witness, Kevin Robey.

92. At the time of the incident, Mr. Robey was inside the home of his cousin, Sandy Myers, a friend of Ms. Youngquist and neighbor across the street from the Mendoza family.

93. Mr. Robey reportedly told Officer Dos Santos and the other officers a version consistent with Ms. Youngquist's story and provided written statements to both Animal Control and the Police Department.

94. According to Mr. Robey's written statements, Mr. Robey saw Zoey approach Ms. Youngquist and her dogs and heard Ms. Youngquist tell Mr. Mendoza to control the puppy, when Mr. Mendoza came out towards Ms. Youngquist with a long object and swing at the dog once.

95. Mr. Robey admitted that he could not hear what the parties said to each other before the incident. He reportedly stated that Ms. Youngquist was walking on the opposite side of the street at the time of the incident and that Mr. Mendoza ran back to his property to pick up the metal object before returning and swinging in a downwards motion at the dogs.

96. Officer Dos Santos prepared an Animal Control report and a drafted, unsigned Application for Statement of Charges which summarized the statements from Mr. Mendoza, Mrs. Mendoza, Ms. Youngquist, and Ms. Youngquist, revealing the differences between the conflicting statements, including but not limited to, (a) whether Ms. Youngquist was on the opposite side of the street or stopped in front of the Mendoza property before the incident; (b) whether the dogs were involved in an aggressive fight or merely running around in circles and playing; (c) whether Ms. Youngquist dropped her dogs' leash and released them onto the Mendoza property; (d) whether Ms. Youngquist's dogs entered and attacked Zoey on the Mendoza property; and (e) whether Mr. Mendoza first used the pole to try to distract the dogs; (f) whether Mr. Mendoza poked the pole among the dogs or swung the pole downwards; and (g) whether the incident occurred in the street or on the Mendoza property.

97. An additional, notable distinction among the statements was Mr. Mendoza and Mrs. Mendoza's explanation of the incident, i.e., that Mr. Mendoza was trying to break up an aggressive dogfight to protect himself, his children, his wife and his dog, versus Ms. Youngquist and Mr. Robey who offered no logical reason for why Mr. Mendoza would strike down on Dex's head as they alleged.

98. Officer Dos Santos knowingly made multiple material misrepresentations and omissions in both her report and drafted Application for Statement of Charges, including, but not limited to:

    a) Omitting that there was available video evidence offered by Mrs. Mendoza, including footage of the incident;

    b) Omitting that there were six (6) additional witnesses of the incident, none of whom were interviewed by Officer Dos Santos;

    c) Omitting her conflict of interest with the investigation due to her preexisting relationship with Ms. Youngquist;

    d) Omitting her conflict of interest with the investigation due to her preexisting relationship with Ms. Youngquist's dog, Dex;

    e) Omitting the familial relationship between Ms. Youngquist and Mr. Mendoza, which Officer Dos Santos was aware of at the time of her investigation and reporting;

    f) Omitting Mr. Mendoza's interest in a report against Ms. Youngquist for her multiple threats and intentional release of her dogs onto his property;

    g) Falsely stating that Mrs. Mendoza stated the attack occurred approximately 10 feet from where Mr. Mendoza stated it occurred; and

h)  Omitting that Mr. Robey, the sole witness supportive of Ms. Youngquist's

allegations, was inside a neighbor's home at the time of the incident.

99. Officer Dos Santos made material omissions in her report and drafted Application

for Statement of Charges, including those listed above, with the intent of misleading Animal

Control and/or the Commissioner to issue criminal charges for animal abuse and aggravated

animal cruelty against Mr. Mendoza.

100.    Officer Dos Santos' drafted Application – which she never signed or filed

so she could conceal her conflict of interest – purported to request criminal charges against Mr.

Mendoza for abuse or neglect of an animal (in violation of Md. Criminal Law Code Ann. ("CR")

§10-604) and aggravated cruelty to animals (in violation of CR §10-606, a felony offense),

despite such charges lacking probable cause under the circumstances and despite her own failure

to review or consider readily available exculpatory evidence.

101.    Despite the multiple contradictory statements from witnesses and Mrs.

Mendoza's offers, Officer Dos Santos refused to view or consider video evidence of the incident

and refused to speak with or take statements from any of the six (6) additional witnesses.

102.    The doorbell video of the incident offered to Officer Dos Santos would

have certainly defeated probable cause for criminal charges against Mr. Mendoza, particularly

the charge of aggravated animal cruelty.

103.    The video shows Ms. Youngquist and her two large dogs on their walk

back while passing the Mendoza property the second time and walking directly in front of the

Mendoza property line. On the video, one can hear some commotion as members of the

Mendoza family, including Mr. Mendoza, call for "Zoey" to "come" so that she remain on the

property.

104.     The video depicts Ms. Youngquist clearly threaten, "I'm just gonna drop the leash." In the video, one then observes Ms. Youngquist stop with her dogs in front of the Mendoza property, the dogs barking, and the dogs then charging towards the Mendoza property. The dogs and Ms. Youngquist are then off screen, but three short seconds later, a clanging sound is heard and then a dog's whimpering. Immediately, Ms. Youngquist and her dogs are back on screen walking away. One hears Mr. Mendoza repeatedly tell Ms. Youngquist, "Off my property," and Ms. Youngquist respond that she will call the police.

105.     The video clearly shows Ms. Youngquist as the aggressor and instigator of the conflict and shows that her dogs charged onto Mr. Mendoza's property.

106.     The video establishes that Mr. Mendoza's actions taken to defend himself, his family, and his dog were justifiable because the video shows Ms. Youngquist's large, aggressive dogs running onto Mr. Mendoza's front yard and towards the area where he, his dog, and his children were located. The video confirms this occurred immediately after Ms. Youngquist threatened to drop the leash and allow her dogs to attack.

107.     Unlike Officer Dos Santos' request of Ms. Youngquist to send her material to be included in the report, Officer Dos Santos made no similar offer or request regarding video footage of the incident or any other evidence to Mr. Mendoza or Mrs. Mendoza.

108.     Mr. Mendoza had additional video evidence that was never requested, viewed or considered by Officer Dos Santos. The additional evidence includes, but is not limited to: (a) a video of Ms. Youngquist on her first walk past the Mendoza home, (b) a video of one of the Mendoza children describe Ms. Youngquist's threats to Mrs. Mendoza shortly after it occurred, (c) and a video of Mr. Mendoza's interview with Officer Dos Santos.

109.     Mr. Mendoza and Mrs. Mendoza were never contacted by Officer Dos Santos, nor anyone else from Animal Control or the Police Department, about the video evidence.

110.     The video of the incident shows that numerous part of Ms. Youngquist's statements were demonstrably false, including but not limited to: (a) that Ms. Youngquist walked directly in front of the Mendoza property during her second time passing it, rather than on the opposite side of the road as Ms. Youngquist and Mr. Robey claimed; (b) that Ms. Youngquist threatened to drop the leash of her dogs, which Ms. Youngquist denied or omitted from her statements to officers; (c) that Ms. Youngquist's dogs were walking in the street until changing direction and charging onto the Mendoza property, rather than the attack occurring in the street as Ms. Youngquist and Mr. Robey claimed; (d) that Mr. Mendoza made multiple statements about Ms. Youngquist and her dogs on his property, contradicting Ms. Youngquist and Mr. Robey's statements that the attack occurred in the street; and (e) that Ms. Youngquist and her dogs immediately proceeded to walk away after the interaction, rather than it taking a few minutes for Dex to rise off the ground as Ms. Youngquist stated in the veterinarian records.

111.     The video further confirms that Ms. Youngquist and Mr. Robey's allegations could not possibly be true.  As the dog attack only lasted about three (3) seconds, it was physically impossible for Mr. Mendoza to have left the street to go to his property, pick up a pole from his yard, and then return to the street during that time, as they both claimed.

112.     Officer Dos Santos knew, or reasonably should have known, that she had an obligation to investigate the readily available video evidence under the circumstances, including (a) because the video was specifically offered by Mrs. Mendoza as potential exculpatory evidence of Mr. Mendoza; (b) because of the contradictions among the witness

statements' in several respects, including basic facts such as where the incident took place and the behavior of the dogs just before the incident; (c) because of the speculative nature of Ms. Youngquist's statement in lacking any alleged motive for the actions she accused Mr. Mendoza of committing, (d) because of Officer Dos Santos' own declination and failure to interview or take statements from six other witnesses of the incident; and (e) because any justification of Mr. Mendoza's alleged action against Ms. Youngquist's dog could negate probable cause for the criminal charges Officer Dos Santos sought against him.

113.     Further, Officer Dos Santos subjectively knew that she should have reviewed and considered the video evidence as part of the investigative file under the circumstances, including her own conflict of interest, her knowledge of the family relationship between Ms. Youngquist and the Mendoza family, and her knowledge of Dex's history of aggressive behavior towards other animals and/or persons.

114.     Instead, Officer Dos Santos intentionally refused to review the offered video evidence, never reached out to Mr. Mendoza or Mrs. Mendoza about the video evidence, and never requested or offered Mr. Mendoza or Mrs. Mendoza the opportunity to submit the video evidence to be part of the file (as she did for the Ms. Youngquist and the veterinarian records).

115.     Even further, Officer Dos Santos intentionally omitted any reference to the existence of the offered video evidence in her Animal Control report or drafted Application for Statement of Charges.

116.     In addition to the video, Officer Dos Santos' intentionally limited other evidence collected in her investigation because of her malice against Mr. Mendoza and to serve her personal interests in serving Ms. Youngquist and Dex.

117.     As Officer Dos Santos had previously told the officers while at the veterinarian clinic, Officer Dos Santos "took to the lead" on the investigation, conducted nearly all of the witness interviews, and obtained most, if not all, of the witness statements.

118.     Officer Dos Santos conducted only brief interviews with Mr. Mendoza and Mrs. Mendoza, refrained from asking them many questions, such as their prior history or interactions with Ms. Youngquist's dogs.

119.     As an Animal Control Agency officer, Officer Dos Santos knew, or should have known, that a history of negative interactions with a dog is critical information when investigating instances of an alleged dog attack.

120.     Officer Dos Santos knew about the familial relationship between Mrs. Mendoza and Ms. Youngquist, yet did not ask any questions regarding such relationship to Mr. Mendoza or Mrs. Mendoza.  Officer Dos Santos further omitted any reference to their relationship in her reporting.

121.     Officer Dos Santos' continued involvement in the investigation involving her associate and friend, Ms. Youngquist, and use of her position as the investigating officer to benefit Ms. Youngquist was improper, unlawful, in violation of Anne Arundel County Code, and in violation of Police Department Rules. *See* Anne Arundel County Code § 7-5-107(a)(1); Police Department Rules, R. 34.

122.     Officer Dos Santos knew and was aware of her obligation to recuse herself from the investigation and admitted to Ms. Youngquist that she should be recusing herself.

123.     Officer Dos Santos intentionally took charge of the investigation, interviews, and preparation of charges and then intentionally conducted an incomplete and improper investigation of the incident.

124.     Officer Dos Santos intentionally performed such actions without legal justification or excuse, but instead with evil or rancorous motive influenced by hate towards Mr. Mendoza and with the purpose to deliberately and willfully injury him.

125.     Despite the competing statements from witnesses, Officer Dos Santos refused Mrs. Mendoza's offer to provide video evidence, which would have corroborated statements by Mr. Mendoza and Mrs. Mendoza, and would have disputed statements made by Ms. Youngquist.

126.     Despite the competing statements from witnesses, Officer Dos Santos further refused to interview, speak to, or ask a single question of any of the Mendoza children, who were six (6) additional witnesses to the incident, including two who were teenagers at the time.

127.     Nonetheless, Officer Dos Santos prepared an Application for Statement of Charges requesting criminal charges against Mr. Mendoza for abuse or neglect of an animal, under Md. Criminal Law Code Ann. ("CR") § 10-604(a)(3) for "inflict[ing] unnecessary suffering or pain on an animal," and aggravated cruelty to animals, under CR § 10-606(b)(1)(iii) for "cruelly beat[ing] an animal."

### Officer Johnson's Application for Statement of Charges

128.     Officer Dos Santos' Application for Statement of Charges was not officially used in requesting criminal charges against Mr. Mendoza.

129.     Instead, Officer Dos Santos invited another Animal Control Agency officer to file the Application for Statement of Charges to disguise her own involvement in the investigation and to increase the likelihood that criminal charges would be issued against Mr. Mendoza.

130.     A second Application for Statement of Charges was prepared, dated April 28, 2020 and indicating the Complainant as Officer Dos Santos' colleague, Animal Control Agency Offer Glenn Johnson (#8715).

131.     Then, a third Application for Statement of Charges was prepared, again with Officer Johnson as the Complainant but dated over a week later: May 4, 2020. A true and correct copy of this Application (hereinafter the "Final Application for Charges") is attached hereto as **Exhibit A.**

132.     On the Final Application for Charges, Officer Johnson's name is further listed under the oath, which states, "I solemnly affirm under the penalties of perjury that the contents of this Application are true to the best of my knowledge, information, and belief." Ex. A.

133.     Although the Final Application for Charges does not show Officer Johnson's physical signature,[3] it was signed by a Commissioner on May 4, 2020 attesting that it was "Subscribed and sworn before" them. Ex. A.

134.     Officer Johnson submitted the Final Application for Charges with the intention that it be treated as his signed statement.

135.     An Animal Control Agency officer "may charge a person with a violation of this [Title 4, Animal Control,] if the individual issuing the charge has probable cause, based on personal knowledge, observation, or a written affidavit of complaint, that the person charged has committed or is committing the violation." Anne Arundel County Code § 12-4-304(a).

---

[3] The affidavit of probable cause required for an application for a statement of charges does not need to be made and signed by a judicial officer *if* executed by a peace officer. *See* Md. Rule 4-211(b)(1), which provides that:

> Except as otherwise provided by statute, a judicial officer may file a statement of charges in the District Court against a defendant who has not been arrested for that offense upon written application containing an affidavit showing probable cause that the defendant committed the offense charged. If not executed by a peace officer, the affidavit shall be made and signed before a judicial officer.

136.     Officer Johnson was not present for the investigation that Officer Dos Santos conducted at the scene of the incident.

137.     Officer Johnson never contacted or corresponded with Mr. Mendoza, or Mrs. Mendoza, before filing the Application for Statement of Charges against him.

138.     Upon information and belief, Officer Dos Santos' Application, report, and/or statements were used and/or relied upon for Officer Johnson's official Application.

139.     Officer Johnson's Application is notably shorter and even more manipulated than Officer Dos Santos' drafted Application, Officer Dos Santos' report, and the Police Department report.

140.     The official Application *solely* includes a statement of events as told by Ms. Youngquist and a statement that Mr. Robey "stated the same events" as told by her.

141.     The Application completely omits any information provided by Mr. Mendoza or Mrs. Mendoza, including, but not limited to, their statements that: (a) Ms. Youngquist made multiple threats against them and their dog; (b) Ms. Youngquist intentionally released the leash of her dogs; (c) Ms. Youngquist's dogs charged onto the Mendoza property and started attacking their puppy, Zoey; (d) Mr. Mendoza's children were present and near the attack, and he feared for their safety and the safety of Zoey; (e) Mr. Mendoza first tried to break up the fight by banging a pole to distract them; (f) Mr. Mendoza then poked the pole to try to break up the fight and inadvertently made contact with Ms. Youngquist's dog, Dex; and (g) there was video evidence of the incident available and offered by Mrs. Mendoza.

142.     In fact, the Application completely omits that Mr. Mendoza and Mrs. Mendoza provided statements at all.

143.     Officer Johnson's Application omits that Officer Dos Santos, referenced as the investigating Animal Control Agency officer, had a conflict of interest with the investigation.  Ex. A.

144.     Officer Johnson's Application omits that family relationship between Ms. Youngquist and the Mendoza family.

145.     Officer Johnson's Application omits any mention of the readily available evidence offered by Mr. Mendoza and Mrs. Mendoza, but missing from the investigative file, including the video evidence of the incident and six witnesses who were never interviewed.

146.     Officer Johnson's Application further asserted facts that he knew, or reasonably should have known, were false, including, but not limited to, that Mr. Mendoza "did abuse an animal "Dex" a brown Cane Corse type breed of dog, did inflict unnecessary suffering, did inflict unnecessary pain, and d[i]d cruelly beat an animal."

147.     Officer Johnson used his position as an Animal Control Agency officer to knowingly, or recklessly, file his Application with false statements and material omissions for the gain of Officer Dos Santos and/or Ms. Youngquist, in violation of Anne Arundel County Code.  *See* Anne Arundel County Code § 7-5-107(a).

148.     Officer Johnson's Application requested criminal charges against Mr. Mendoza under CR § 10-604(a)(3) (abuse or neglect of an animal, for inflicting unnecessary pain on an animal) and CR § 10-606(b)(1)(iii) (aggravated cruelty to an animal, for cruelly beating an animal), as well as a violation of Anne Arundel County Code § 12-4-902 for animal at large.

149.     Officer Johnson intended for his Application to mislead the Commissioner in finding probable cause for such charges by deliberately, or with reckless disregard for the truth, making false statements and omissions material to such finding.

150.     Upon application by Officer Johnson for charging Mr. Mendoza, Mr. Mendoza was criminally charged with aggravated cruelty to an animal, in violation of CR § 10-606((b)(1)(iii)); animal cruelty in violation of CR § 10-604((a)(3); and animal at large, in violation of AA Code § 12-4-905, in *State of Maryland v. Moses Mendoza*, Case No. D-07-CR-20-001448 in the District Court of Maryland for Anne Arundel County.

151.     CR § 10-606(b)(1)(iii), titled "Aggravated cruelty to animals – In general," states that "[a] person may not . . . intentionally . . . cruelly beat an animal." A violation of CR § 10-606 is a felony and punishable up to 3 years of imprisonment or a $5,000 fine or both. CR § 10-606(c)(1).

152.     "Cruelty," as used in CR § 10-606, is defined as "the unnecessary or unjustifiable physical pain or suffering caused or allowed by an act, omission, or neglect" and "includes torture and torment." CR § 10-601(c).

153.     The other offenses which amount to a violation of CR § 10-606 include intentional sexual contact with an animal, intentional mutilation of an animal, and intentional torture of an animal. CR § 10-606(b)(1)(i), (ii), (v).

154.     CR § 10-604(a)(3), titled "Abuse or neglect of animal," states that "[a] person may not . . . inflict unnecessary suffering or pain on an animal."

155.     Anne Arundel County Code § 12-4-905(b) states that "[a] domesticated animal may not be at large. An owner of animal at large is in violation of this section." An animal is "at large" if it is "off the property of an animal's owner and not leashed and under the control of a reasonable person." Anne Arundel County Code § 12-4-101(8).[4]

---

[4] Ms. Youngquist intentionally violated Anne Arundel County Code § 12-4-905(b) when she dropped the leash to her dogs, allowing them to run onto Mr. Mendoza's property.

156.     On or around July 24, 2020, the State issued a subpoena for discovery material against Mr. Mendoza.

157.     The State, through the State's Attorney for Anne Arundel County, issued a written request of documents and information, which Mr. Mendoza was required to comply with and produce pursuant to Md. Rule 4-262(e).

158.     During discovery in the criminal case, Mr. Mendoza's defense attorney notified the State prosecutor of the video evidence which would corroborate the Mendoza's version of events.

159.     After the video evidence was reviewed by the State, the State's Attorney determined that there was no evidence to prosecute Mr. Mendoza for aggravated animal cruelty or animal cruelty.

160.     On or around November 13, 2020, the criminal charges against Mr. Mendoza in Case No. D-07-CR-20-001448 arising out of the incident were entered as *nolle prosequi.*

161.     Mr. Mendoza solely pled guilty to the citation for animal at large because of the first interaction during which Zoey momentarily left the property, and was sentenced with probation before judgment pursuant to Criminal Procedure Art. §6-220.

### *Injuries and Damages*

162.     Mr. Mendoza was formally charged with criminal offenses, including the felony of aggravated cruelty to an animal, for over seven (7) months.

163.     At the time Mr. Mendoza was charged, he was earning approximately $159,000/year, plus bonuses, as an information technology specialist with U.S. Customs and Border Protection, requiring a level of security clearance.

164.     Mr. Mendoza had maintained a Top Secret-SCI level of security clearance with the federal government for over 20 years, beginning with the eight years he served in the Air Force of the U.S. Military.

165.     As a result of the criminal charges filed against Mr. Mendoza, his security clearance was revoked. It was never reinstated again.

166.     Even after the criminal charges were entered *nolle prosequi*, the federal government (Mr. Mendoza's employer) relied upon false Animal Control police reports and the false application for statement of charges against Mr. Mendoza and accused him of lack of candor, failure to follow policy, and conduct unbecoming.

167.     Mr. Mendoza was informed that, because Anne Arundel County pursued criminal charges against him which included a felony offense, he would no longer be eligible for employment with the federal government for positions with a security clearance.

168.     In addition to the legal fees incurred for his criminal charges, Mr. Mendoza also incurred fees to retain an attorney in the appeal of his employer's termination decision, which was unsuccessful.

169.     As a direct and proximate result of Defendants' conduct, Mr. Mendoza lost his employment, his security clearance, the opportunity for any employment requiring such security clearance, and the entire possibility of future employment with the federal government, which will always have access to the criminal charges against him regardless of their disposition or any expungement measures.

170.     As a result, Mr. Mendoza lost his federal pension and other benefits to which he was entitled due to his twenty-plus years of service to the military and federal government, including, but not limited to, his life insurance policy and healthcare benefits.

171.     Furthermore, Mr. Mendoza remains severely impacted from his prospects for future employment due to the criminal charges filed against him and the resulting termination of his position with the federal government. Since Mr. Mendoza was terminated by the federal government, he has not been able to secure a job with a comparable salary or benefits, or a job in the same career field.  Given the nature of Mr. Mendoza's field, the lapse in his career resulting from Defendants' conduct has caused Mr. Mendoza's experience and training to become outdated, and he will require significant additional training to be able to bring his skills current and re-enter the field.

172.     The cascading effect has hurt Mr. Mendoza's access to healthcare and his ability to meet financial obligations such as mortgage payments and necessities for his children.

173.     Mr. Mendoza was forced to withdraw from his 401(k), taking a loss in the process, and forced to stop therapy for his child with autism, in order to meet his financial obligations.

174.     At least one of Mr. Mendoza's children have been harassed and bullied for having a father accused of animal cruelty.

175.     As a direct and proximate result of Defendants' conduct, Mr. Mendoza has suffered severe emotional distress which continues to affect him on a daily basis and which has resulted in physical manifestations, including depression, anxiety, weight gain, constant headaches, pain in his lower back, nausea, lack of energy and enthusiasm, lack of motivation, malaise, apathy, mental displacement, and insomnia. To this day, he feels tired all the time and detached from those around him, and his ability to have a relationship with his wife and children has been affected.

32

176.     As a direct and proximate result of Defendants' conduct, Mr. Mendoza

suffered damages, including but not limited to embarrassment and humiliation, loss of

employment, loss of security clearance and qualifications, loss of freedom to take advantage of

certain employment opportunities, loss of past and future earnings, damage to his personal and

professional reputation, stress, anxiety, severe mental and emotional distress, and deprivation of

his constitutional rights under the Maryland Declaration of Rights and United States

Constitution.

**COUNT I**
**False Light**
**(Plaintiff v. Officer Dos Santos, Officer Johnson, and Anne Arundel County, Maryland)**

177.     Plaintiff Moses Mendoza incorporates and re-alleges the foregoing

paragraphs as if fully alleged herein.

178.     At all times relevant hereto, Officer Dos Santos and Officer Johnson were

each acting within the scope of their employment and as agents, servants and employees of Anne

Arundel County.

179.     By the actions described above, Officer Dos Santos and Officer Johnson

gave publicity to a matter concerning Plaintiff which placed him before the public in a false light

in the preparation and submission of reports and applications for statement of charges.

180.     Officer Dos Santos and Officer Johnson placed Plaintiff in a false position

to the public by attributing to him characteristics, conduct and/or beliefs which were false.

181.     The false light which Plaintiff was placed in, including accusations of

animal cruelty and of cruelly beating an animal without any justification, would be highly

offensive to a reasonable person.

182.     Officer Dos Santos and Officer Johnson knew that the statements publicized about Plaintiff were false, or publicized such statements with a reckless disregard for the truth of them.

183.     The actions of Officer Dos Santos and Officer Johnson were in accordance with and/or because of the customs, practices, policy, training, and/or standards of conduct of the County.

184.     The actions of Officer Dos Santos and Officer Johnson were taken deliberately, with ill will and actual malice.

185.     Additionally, or in the alternative, the actions of Officer Dos Santos and Officer Johnson Officer Dos Santos were taken in the course of their employment with the County.

186.     As a direct and proximate result of Defendants' conduct, Mr. Mendoza suffered damages, including, but not limited to, loss of employment, loss of security clearance, loss of opportunity for certain employment positions, loss of past and future earnings, loss of employment benefits, embarrassment and humiliation, damage to his professional and personal reputation, pain and suffering, and severe emotional and mental distress.

WHEREFORE, Plaintiff demands judgment against Defendants Vanessa Dos Santos, Glenn Johnson, and Anne Arundel County, Maryland in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), together with interest, the costs of this action, attorneys' fees, punitive damages in an amount to be determined at trial, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT II
### Malicious Prosecution
**(Plaintiff v. Officer Dos Santos, Officer Johnson, and Anne Arundel County, Maryland)**

187.     Plaintiff Moses Mendoza incorporates and re-alleges the foregoing paragraphs as if fully alleged herein.

188.     At all times relevant hereto, Officer Dos Santos and Officer Johnson were each acting within the scope of their employment and as agents, servants and employees of Anne Arundel County.

189.     Defendants instituted and/or continued a criminal proceeding against Plaintiff.

190.     Officer Dos Santos prepared a report and an application for criminal charges against Plaintiff, including charges for animal cruelty and the felonious violation of aggravated animal cruelty.

191.     Officer Dos Santos intentionally failed to obtain or consider readily apparent evidence, including exculpatory video and witness evidence, and failed to disclose the existence of such evidence in both her report and application for charges.

192.     Officer Dos Santos provided information to Officer Johnson which she knew was false or which she had a reckless disregard of whether the information was false, which Officer Johnson then relied upon and/or used to prepare the Application for Statement of Charges later filed with the District Court of Maryland for Anne Arundel County, Maryland. Officer Johnson's Application asserted information which he either knew to be false or with which he had a reckless disregards of whether the information was false.

193.     On or about May 4, 2020, Officer Johnson filed his Application to request charges against Plaintiff, including charges for animal cruelty under CR § 10-604((a)(1)(2)(iii)) and  aggravated cruelty to an animal under CR § 10-606((b)(1)(iii)), resulting in their issue

against him in *State of Maryland v. Moses Mendoza*, Case No. D-07-CR-20-001448 in the District Court of Maryland for Anne Arundel County, Maryland.

194.     Officer Dos Santos and Officer Johnson lacked probable cause for such criminal charges against Plaintiff and knew, or should have known, that they lacked probable cause at the time Plaintiff was charged.

195.     Officer Dos Santos and Officer Johnson did not sincerely, correctly and/or reasonably believe that Plaintiff had committed actions constituting the criminal charges requested against him.

196.     On or about November 13, 2020, the criminal charges against Plaintiff arising out of Defendants' reports and applications were entered as *nolle prosequi*.

197.     Defendants acted with ill will, actual malice, and without probable cause in charging Plaintiff.

198.     As a direct and proximate cause of the malicious prosecution, Plaintiff has suffered and will continue to suffer mental anguish, embarrassment and humiliation, damage to his professional and personal reputation, and other emotional damages.  Plaintiff was also forced to obtain the services of an attorney to represent him as a result of the unlawful charges and incurred legal fees.

199.     As a direct and proximate cause of the malicious prosecution, Plaintiff further suffered economic damages, including, but not limited to, loss of employment, loss of security clearance, loss of opportunity to certain employment positions, loss of past and future earnings, loss of employment benefits, embarrassment and humiliation, damage to his professional and personal reputation, pain and suffering, and severe emotional and mental distress.

200.      At all times relevant hereto, Officer Dos Santos and Officer Johnson each

acted in their official capacity as sworn Animal Control officers of Anne Arundel County.

201.      The actions of Officer Dos Santos and Officer Johnson were in accordance

with and/or because of the customs, practices, policy, training, and/or standards of conduct of the

County.

202.      The actions of Officer Dos Santos and Officer Johnson were taken

deliberately, with ill will and actual malice.

203.      Additionally, or in the alternative, the actions of Officer Dos Santos and

Officer Johnson Officer Dos Santos were taken in the course of her employment with the

County.

WHEREFORE, Plaintiff demands judgment against Defendants Vanessa Dos Santos,

Glenn Johnson, and Anne Arundel County, Maryland in an amount exceeding Seventy-Five

Thousand Dollars ($75,000.00) plus interest, the costs of this action, attorneys' fees, punitive

damages in an amount to be determined at trial, and such other and further relief as this Court

deems just and proper under the circumstances.

### COUNT III
**Civil Conspiracy**
**(Plaintiff v. Officer Dos Santos, Officer Johnson, and Anne Arundel County, Maryland)**

204.      Plaintiff Moses Mendoza incorporates and re-alleges the foregoing

paragraphs as if fully alleged herein.

205.      At all times relevant hereto, Officer Dos Santos and Officer Johnson were

each acting within the scope of their employment and as agents, servants and employees of Anne

Arundel County.

206.     Officer Dos Santos and Officer Johnson entered into an agreement or understanding, whereby Officer Johnson agreed to wrongfully defame Plaintiff, place Plaintiff in a false light, fraudulently misrepresent Plaintiff's actions, and/or institute criminal proceedings for criminal charges against Plaintiff without probable cause.

207.     Officer Dos Santos and Officer Johnson entered into an agreement or understanding, whereby Officer Johnson agreed to use his public position as a sworn officer for the gain of Officer Dos Santos and Sarah Youngquist, in violation of Anne Arundel County § 7-5-107(a)(1)(i) ("An employee may not intentionally use the prestige of office or public position: . . . for that employee's private gain or the gain of another.").

208.     These unlawful acts were agreed to and/or committed in furtherance of Defendant's tortious conduct and constitutional attack against Plaintiff.

209.     As a result of Officer Dos Santos and Officer Johnson's conspiracy, Plaintiff has suffered and will continue to suffer damages, including, but not limited to, loss of employment, loss of past and future earnings, loss of employment benefits, embarrassment and humiliation, severe mental and emotional distress, damage to his professional and personal reputation, pain and suffering, and severe emotional and mental distress.

210.     At all times relevant hereto, Officer Dos Santos and Officer Johnson each acted in their official capacity as sworn Animal Control officers of Anne Arundel County.

211.     The actions of Officer Dos Santos and Officer Johnson were in accordance with and/or because of the customs, practices, policy, training, and/or standards of conduct of the County.

212.     The actions of Officer Dos Santos and Officer Johnson were taken deliberately, with ill will and actual malice.

38

213.    Additionally, or in the alternative, the actions of Officer Dos Santos and Officer Johnson were taken in the course of her employment with the County.

WHEREFORE, Plaintiff demands judgment against Defendants Vanessa Dos Santos, Glenn Johnson, and Anne Arundel County, Maryland in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00) plus interest, the costs of this action, attorneys' fees, punitive damages in an amount to be determined at trial, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT IV
### Violation of Article 24 of the Maryland Declaration of Rights
### Substantive and Procedural Due Process
### (Plaintiff v. Officer Dos Santos, Officer Johnson, and Anne Arundel County, Maryland)

214.    Plaintiff Moses Mendoza incorporates and re-alleges the foregoing paragraphs as if fully alleged herein.

215.    At all times relevant hereto, Officer Dos Santos and Officer Johnson were each acting within the scope of their employment and as agents, servants and employees of Anne Arundel County.

216.    Article 24 of the Declaration of Rights of the Maryland Constitution states: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

217.    By the actions detailed above, Defendants deprived Plaintiff of his rights under Article 24, including, but not limited to, the right to substantive and procedural due process and the right to be free from unlawful deprivation of liberty, property and privacy.

218.     Defendants had no lawful justification for the criminal charges they initiated, sought, and pursued against Plaintiff, and which Officer Dos Santos and Officer Johnsons conspired to cause to be issued against Plaintiff.

219.     Officer Dos Santos and Officer Johnson each, separately and in cooperation with each other, intentionally, knowingly, and willfully caused criminal charges to be issued against Plaintiff despite lacking probable cause.

220.     Defendants' conduct deprived Plaintiff of his constitutional rights to liberty and property to which he was entitled, including, but not limited to, his right to engage in his employment, his security clearance, his freedom to take advantage of other employment opportunities, his good name and reputation with the federal government and others, his pension benefits accrued through service to the military and federal government, and his life insurance policy and healthcare benefits acquired through service with the military and federal government.

221.     The actions of Officer Dos Santos and Officer Johnson were in accordance with and/or because of the customs, practices, policy, training, and/or standards of conduct of the County.

222.     As a direct and proximate cause of Defendants' actions, Mr. Mendoza suffered damages including, but not limited to, loss of employment, loss of security clearance, loss of past and future earnings, loss of employment benefits, severe mental and emotional distress, damage to his professional and personal reputation, pain and suffering, and severe emotional and mental distress.

223.    At all times relevant hereto, Officer Dos Santos and Officer Johnson each acted will ill will and actual malice, and/or were grossly negligent in their actions with a reckless disregard of the consequences as affecting the life or property of Mr. Mendoza.

224.    Additionally, or in the alternative, the actions of Officer Dos Santos and Officer Eaton were taken in the course of their employment with the Anne Arundel County, Maryland.

WHEREFORE, Plaintiff demands judgment against Defendants Vanessa Dos Santos, individually and in her official capacity as an Anne Arundel County law enforcement officer, Glenn Johnson, individually and in his official capacity as an Anne Arundel County law enforcement officer, and Anne Arundel County, Maryland in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00) plus interest, the costs of this action, attorneys' fees, punitive damages in an amount to be determined at trial, and such other and further relief as this Court deems just and proper under the circumstances.

### COUNT V
**Article 26 of the Maryland Declaration of Rights**
**Search and Seizure**
**(Plaintiff v. Officer Dos Santos, Officer Johnson, and Anne Arundel County, Maryland)**

225.    Plaintiff Moses Mendoza incorporates and re-alleges the foregoing paragraphs as if fully alleged herein.

226.    At all times relevant hereto, Officer Dos Santos and Officer Johnson were each acting within the scope of their employment and as agents, servants and employees of Anne Arundel County.

227.    Based on the allegations above, Defendants Officer Dos Santos and Officer Johnson deprived Plaintiff of his rights under Article 26 of the Maryland Declaration of

rights, including, but not limited to, freedom from unlawful search or seizure, freedom from

malicious prosecution, and freedom from abuse of power by the police.

228.     Defendants knowingly made false statements and omissions material and

necessary to the Commissioner's finding of probable cause against Plaintiff and causing a

statement of criminal charges, including a felony, to be wrongfully issued against Plaintiff.

229.     Defendants made such material statements and omissions of material facts

deliberately or with reckless disregard for the truth.

230.     Defendant Officer Dos Santos deliberately or recklessly failed to

investigate readily available exculpatory evidence and to disclose the available video and witness

evidence, with the intent of misleading the Commissioner and/or fellow Animal Control Agency

officer, and with the intent of knowingly causing criminal charges to issue against Plaintiff

without probable cause.

231.     Defendant Officer Johnson deliberately or recklessly made false

statements and material omissions in his Application for Statement of Charges he presented to

the Commissioner with the intent of such document representing his sworn testimony and with

the intent of knowingly, or recklessly, causing criminal charges to issue against Plaintiff without

probable cause.

232.     Officer Dos Santos knowingly withheld information material to the

investigation from Officer Johnson and/or entered into an agreement with Officer Johnson to

deliberately, or recklessly, omit material information from the Commissioner.

233.     Defendants deprived Plaintiff of his rights protected by the Fourth

Amendment by each of their actions constituting malicious prosecution, by causing Plaintiff to

42

be subjected to unlawful search as part of the criminal action instituted against him, and by causing the invasion to his privacy through placing him in a false light to the public.

234.     The actions of Defendants were without provocation, without legal justification, and with the intent to violate the civil rights of Plaintiff.

235.     In committing the foregoing acts, Officer Dos Santos and Officer Johnson were not acting in objectively reasonable reliance on existing law, including law requiring probable cause for criminal charges.

236.     Both Officer Dos Santos and Officer Johnson knew, or reasonably should have known, that an application for charges which contained deliberate or reckless material omissions would not be supported by probable cause.

237.     The actions of Officer Dos Santos and Officer Johnson were in accordance with and/or because of the customs, practices, policy, training, and/or standards of conduct of the Anne Arundel County Police Department, Animal Control Agency, and Anne Arundel County, Maryland.

238.     As a direct and proximate result of Defendants' foregoing actions, Plaintiff suffered damages, including, but not limited to, loss of employment, loss of security clearance, loss of past and future earnings, loss of employment benefits, embarrassment and humiliation, severe mental and emotional distress, damage to his professional and personal reputation, pain and suffering, and violations of his constitutional rights including those under Article 26.

239.     At all times relevant hereto, Officer Dos Santos and Officer Johnson each acted will ill will and actual malice, and/or were grossly negligent in their actions with a reckless disregard of the consequences as affecting the constitutional rights of Plaintiff.

240.     Additionally, or in the alternative, the actions of Officer Dos Santos and Officer Johnson were taken in the course of their employment with the Anne Arundel County, Maryland.

WHEREFORE, Plaintiff demands judgement against Defendants Vanessa Dos Santos, individually and in her official capacity as an Anne Arundel County law enforcement officer, Glenn Johnson, individually and in his official capacity as an Anne Arundel County law enforcement officer, and Anne Arundel County, Maryland in excess of Seventy-Five Thousand Dollars ($75,000) in compensatory and punitive damages, with interest and costs.

## COUNT VI
### Articles 24 and 26 of the Maryland Declaration of Rights
### Unconstitutional Practice, Policy, Custom and/or Training
### (Plaintiff v. Anne Arundel County, Maryland)

241.     Plaintiff Moses Mendoza incorporates and re-alleges the foregoing paragraphs as if fully alleged herein.

242.     At all times relevant hereto, Officer Dos Santos and Officer Johnson were each acting within the scope of their employment and as agents, servants and employees of Anne Arundel County, Maryland.

243.     By the actions detailed above, Defendants deprived Mr. Mendoza of his rights under Article 24 and Article 26 of the Maryland Declaration of Rights, including but not limited to the right to property, right to liberty, right to privacy, right to freedom from abuse of power of the police, and right to freedom from unreasonable search and seizure.

244.     While Officer Dos Santos and Officer Johnson violated Mr. Mendoza's constitutional rights by wrongfully causing false criminal charges to be issued against him and/or depriving him of his constitutionally protected rights and interests, the County committed a separate and distinct violation of Plaintiff's constitutional rights by authorizing, permitting,

and/or allowing the officers to be assigned to a case with which they have a conflict of interest, to refuse readily available evidence despite notice of its exculpatory value, to conspire to bring the criminal charges against him, to apply for criminal charges without probable cause, to apply for criminal charges despite failing to review or obtain readily available despite notice of its exculpatory value, to apply for criminal charges by asserting or relying on information known to be false or which reasonably should have been known to be false, to permit and conceal a conflict of interest while conducting and taking the lead of an investigation, and to abuse one's position as a law enforcement for personal motive or animus.

245. On information and belief, Anne Arundel County officers are trained, authorized, and/or permitted to investigate a dispute involving their associates.

246. On information and belief, Anne Arundel County officers are trained, authorized, and/or permitted to apply for criminal charges without probable cause and/or to take actions to abuse their position as law enforcement officers, including those described above.

247. On information and belief, Anne Arundel County officers are trained, authorized, and/or permitted to use their position as an officer for their own private gain and/or the gain of another person.

248. The actions of Officer Dos Santos and Officer Johnson were an unreasonable and wrongful abuse of power taken to cause criminal charges to be issued against Plaintiff, thereby injuring him as alleged above in violation of his constitutional rights protected by Articles 24 and 26 of the Maryland Declaration of Rights.

249. During the commission of the foregoing acts, Officer Dos Santos and Officer Johnson were each acting as agents of and within the scope of their employment by the County.

45

250.    The actions of Officer Dos Santos and Officer Johnson were in accordance with the unconstitutional practice, custom, policy and/or training they received from the County.

251.    As a result of Defendants' actions, Plaintiff suffered damages, including, but not limited to, loss of employment, loss of security clearance, loss of past and future earnings, loss of employment benefits, embarrassment and humiliation, severe mental and emotional distress, damage to his professional and personal reputation, pain and suffering, and severe emotional and mental distress.

WHEREFORE, Plaintiff demands judgment against Defendant Anne Arundel County, Maryland in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00) plus interest, the costs of this action, attorneys' fees,  and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VII
### Violation of 42 U.S.C. § 1983 – Substantive and Procedural Due Process
### Fourteenth Amendment of the U.S. Constitution
### (Plaintiff v. Officer Dos Santos and Officer Johnson)

252.    Plaintiff Moses Mendoza incorporates and re-alleges the foregoing paragraphs as if fully alleged herein.

253.    This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of right, privilege and immunity secured to the Plaintiff by the Fourteenth Amendment to the United States Constitution.

254.    At all times relevant hereto, Officer Dos Santos and Officer Johnson were each acting within the scope of their employment as law enforcement officers and as agents, servants and employees of Anne Arundel County, Maryland.

255.    Based on the allegations above, Officer Dos Santos and Officer Johnson, each acting in their individual capacity, acted under color of State law and deprived Plaintiff of

his clearly established rights protected by the Fourteenth Amendment to the U.S. Constitution, said rights including, but not limited to freedom from the deprivation of property without due process of the law and freedom from the abuse of power by the police.

256.     Plaintiff had a right to substantive and procedural due process of the law.

257.     Officer Dos Santos and Officer Johnson deprived Plaintiff of these liberties, each by their actions in their individual capacity, including, but not limited to, knowingly preparing reporting and charging documents with false statements and material omissions concerning Plaintiff, failing to obtain or consider readily available evidence, defaming Plaintiff, placing Plaintiff in a false light, concealing their conflicts of interest with an investigation and/or knowledge of such conflicts, and otherwise causing criminal charges against Plaintiff which they each knew, or reasonably should have known, had no basis in law or fact.

258.     Officer Dos Santos knowingly and intentionally asserted the lead in an investigation involving her associate and intentionally used the prestige of her position as an Animal Control Agency officer for the private gain of that associate.

259.     Officer Johnson knowingly and intentionally used the prestige of his position as an Animal Control Agency officer to apply for criminal charges against Plaintiff, despite having no personal knowledge of the alleged incident, for the private gain of Officer Dos Santos and/or Officer Dos Santos' associate.

260.     The actions of Officer Dos Santos and Officer Johnson were without provocation, without legal justification, and with the intent to violate the civil rights of Plaintiff.

261.     In committing the foregoing acts, Officer Dos Santos and Officer Johnson were not acting in objectively reasonable reliance on existing law, including law regarding animal cruelty and aggravated animal cruelty.

262.     As a direct a proximate result of Defendants' foregoing actions, Plaintiff suffered damages, including, but not limited to, loss of employment, loss of past and future earnings, loss of employment benefits, embarrassment and humiliation, severe mental and emotional distress, damage to his professional and personal reputation, pain and suffering, and severe emotional and mental distress.

WHEREFORE, Plaintiff demands judgment against Defendants Vanessa Dos Santos, individually as an Anne Arundel County law enforcement officer, and Glenn Johnson, individually as an Anne Arundel County law enforcement officer, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00) plus interest, the costs of this action, attorneys' fees, and such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VIII
### Violation of 42 U.S.C. § 1983 – Malicious Prosecution and Abuse of Power
### Fourth Amendment of the U.S. Constitution
### (Plaintiff v. Officer Dos Santos and Officer Johnson)

263.     Plaintiff Moses Mendoza incorporates and re-alleges the foregoing paragraphs as if fully alleged herein.

264.     This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of right, privilege and immunity secured to the Plaintiff by the Fourth Amendment to the United States Constitution.

265.     Defendants Officer Dos Santos and Officer Johnson, at all relevant times to this Complaint, worked as law enforcement officers of the Anne Arundel County Police Department.

266.     Based on the allegations above, Officer Dos Santos and Officer Johnson, each acting in their individual capacity, acted under color of State law and deprived Plaintiff of

48

his clearly established rights protected by the Fourth Amendment to the U.S. Constitution, said rights including, but not limited to the right to freedom from unreasonable search and seizure and right to freedom from the abuse of power by the police.

267.    Plaintiff had a constitutionally protected interest to be free from unlawful and unreasonable search and seizure.

268.    Defendants knowingly made false statements and omissions material and necessary to the finding of probable cause against Plaintiff and for the purpose of causing a statement of criminal charges, including a felony, to be wrongfully issued against Plaintiff.

269.    Defendants made such material statements and omissions of material facts deliberately or with reckless disregard for the truth.

270.    Additionally, Defendant Officer Dos Santos intentionally failed to investigate readily available exculpatory evidence and to disclose her knowledge of the available video and witness evidence, with the intent of misleading the Animal Control Agency and/or the Commissioner, and with the intent of knowingly causing criminal charges to issue against Plaintiff without probable cause.

271.    Defendant Officer Johnson deliberately or recklessly made false statements and material omissions in a document presented to the Commissioner with the intent of such document representing his sworn testimony and with the intent of knowingly, or recklessly, causing criminal charges to issue against Plaintiff without probable cause.

272.    Officer Dos Santos knowingly withheld material to the investigation from Officer Johnson and/or entered into an agreement with Officer Johnson to deliberately, or recklessly, omit material information from the Commissioner.

273.     Defendants deprived Plaintiff of his rights protected by the Fourth Amendment by each of their actions constituting malicious prosecution, by causing him to be subjected to unlawful search as part of the criminal action instituted against him, and by causing the invasion to his privacy through placing him in a false light to the public.

274.     The actions of Defendants were without provocation, without legal justification, and with the intent to violate the civil rights of Plaintiff.

275.     In committing the foregoing acts, Defendants were not acting in objectively reasonable reliance on existing law, including law requiring probable cause for criminal charges.

276.     Both Officer Dos Santos and Officer Johnson knew, or reasonably should have known, that an application for charges which contained deliberate or reckless material omissions would not be supported by probable cause.

277.     As a direct a proximate result of Defendants' foregoing actions, Plaintiff suffered damages, including, but not limited to, loss of employment, loss of past and future earnings, loss of employment benefits, embarrassment and humiliation, severe mental and emotional distress, damage to his professional and personal reputation, pain and suffering, and severe emotional and mental distress.

WHEREFORE, Plaintiff demands judgment against Defendants Vanessa Dos Santos, individually as an Anne Arundel County law enforcement officer, and Glenn Johnson, individually as an Anne Arundel County law enforcement officer, in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00) plus interest, the costs of this action, attorneys' fees, and such.

**JURY DEMAND**

50

Plaintiff demands a jury trial as to all counts so triable.


                                      */s/ Timothy F. Maloney*
                                        Timothy F. Maloney


                                        Respectfully Submitted,

                                        JOSEPH, GREENWALD & LAAKE, P.A.

                                        By   */s/ Timothy F. Maloney*
                                        Timothy F. Maloney; tmaloney@jgllaw.com
                                        CPF No. 8606010245
                                        Bridget Cardinale; bcardinale@jgllaw.com
                                        CPF No. 2211070011
                                        6404 Ivy Lane, Suite 400
                                        Greenbelt, Maryland 20770
                                        (301) 220-2200 (tel.)
                                        (301) 220-1214 (fax)


                                        *Counsel for Plaintiff*