### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MOSES MENDOZA, | * |
| *Plaintiff,* | * |
| | * |
| v. | *     **Case No. 1:23-cv-01383-JRR** |
| | * |
| ANNE ARUNDEL COUNTY, MARYLAND, et al., | * |
| | * |
| *Defendants.* | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### <u>MEMORANDUM OPINION</u>

Plaintiff Moses Mendoza filed the underlying action against Defendants Anne Arundel County, Maryland ("the County"), Officer Vanessa Dos Santos, and Officer Glenn Johnson (together, "Defendant Officers"), alleging state tort claims, and state and federal constitutional claims. (ECF No. 3; the "Complaint.")  Defendants removed the action to this court. (ECF No. 1.)  Pending now before the court is Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.  (ECF No. 9; the "Motion.")  The court has reviewed all papers.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, by accompanying order, Defendants' Motion, construed as a motion to dismiss, will be GRANTED IN PART AND DENIED IN PART.

## I.     <u>BACKGROUND</u>[1]

On April 25, 2020, Plaintiff, his wife (Colleen Mendoza), his six minor children, and his five-month-old Weimaraner puppy Zoey, weighing approximately 20 pounds, were in the front

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint.  (ECF No. 3.)  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

yard of Plaintiff's property located at 1805 Glenarm Road in Edgewater, Maryland.  (ECF No. 3 ¶¶ 6, 34.)  Mrs. Mendoza's stepsister, Sarah Youngquist, lived on a neighboring property.  *Id.* ¶ 16.  Ms. Youngquist owned two Cane Corso dogs, Dexter ("Dex") and Lexi, both approximately 88 pounds.  *Id.* ¶¶ 16, 34.  At around 12:00 p.m., Ms. Youngquist walked her dogs in front of the Mendoza home.  Plaintiff was away from the home at the time; his family was outside in the yard.  *Id.* ¶¶ 18, 19.  At that time, Zoey left Plaintiff's property and approached Ms. Youngquist's dogs.  *Id.* ¶ 18.  Plaintiff's family called Zoey back to the yard, and, after she returned to the yard, Ms. Youngquist yelled to Plaintiff's children that her dogs would "fucking kill" Zoey.  *Id.* ¶ 19.  Mrs. Mendoza overheard the threat.  (ECF No. 3 ¶  19.)  Out of fear, the children brought Zoey inside the house.  *Id.* ¶ 20.

Later that afternoon, Plaintiff had returned home and was gardening in his front yard; his wife, children, and Zoey accompanied him in the front yard.  *Id.* ¶¶ 22–23.  Ms. Youngquist again walked her dogs past the Mendoza home.  *Id.* ¶ 23.  Zoey approached the dogs again but stayed on Plaintiff's property.  *Id.*  Plaintiff and his wife called Zoey back closer to the home and away from the dogs, and Plaintiff asked Ms. Youngquist to move past his property. *Id.* ¶ 24.  At this time, Zoey remained at Plaintiff's feet in his yard.  *Id.* ¶ 25.  Ms. Youngquist remained in front of the Mendoza home while her dogs barked aggressively at Zoey and stood in threatening postures. (ECF No. 3 ¶ 26.)  Ms. Youngquist then indicated to Plaintiff that she would drop the dogs' leashes and subsequently did so.  *Id.* ¶¶  27–28.  Ms. Youngquist's dogs then charged onto Plaintiff's property and began attacking Zoey, inches from Plaintiff's feet and close to his children.  *Id.* ¶¶ 29–30.  Ms. Youngquist's dogs' movements were "erratic, chaotic, and uncontrolled."  *Id.* ¶ 33. Plaintiff, fearing for his safety – and that of his wife, his children, and Zoey – took a pole that he was holding and hit it on the ground in an attempt to scare the dogs apart.  *Id.* ¶¶ 34, 36.  When

that did not work, Plaintiff again tried to stop the fight by inserting the pole between the dogs to separate them. *Id.* ¶ 37. As a result, the pole unintentionally "made contact with" Dex's head. (ECF No. 3 ¶ 38.) Ms. Youngquist's dogs then stopped their attack and returned to Ms. Youngquist on the street. *Id.* ¶ 39. The whole incident lasted approximately three seconds. *Id.* ¶ 40. Plaintiff then told Ms. Youngquist to "get off his property." *Id.* ¶ 45. Ms. Youngquist left the area and returned to her home. *Id.* ¶ 46. Plaintiff and his wife later observed Ms. Youngquist speaking to her neighbor, Sandy Myers, and her neighbor's cousin, Kevin Robey. *Id.* ¶ 47.

Ms. Youngquist subsequently took Dex to Anne Arundel Veterinary Emergency Clinic where she contacted Anne Arundel County Police Department. (ECF No. 3 ¶¶ 48, 50.) The police department contacted the Animal Control Dispatch, which in turn assigned the matter to Animal Control Agency Officer Vanessa Dos Santos. *Id.* ¶ 51. Officer Dos Santos had a personal relationship with Ms. Youngquist, having lived together for nearly a year. *Id.* ¶ 56. At the time of dispatch, Officer Dos Santos knew that the matter involved Ms. Youngquist. *Id.* ¶ 55. Officer Dos Santos had also previously lived with Dex and knew that Dex had a history of aggressive behavior. *Id.* ¶ 60. Specifically, Officer Dos Santos knew that Dex had previously attacked a young girl who required medical care in the form of stitches and a skin graft. *Id.* ¶ 59.

Officer Dos Santos responded to the veterinary clinic where Ms. Youngquist provided her with the contact information for Mr. Robey as a witness. (ECF No. 3 ¶¶ 63–64.) Ms. Youngquist reported to Officer Dos Santos that Zoey approached her dogs, and that the dogs wanted to play. *Id.* ¶ 65. Ms. Youngquist then reported that Plaintiff approached her, yelled at her, picked up a metal pole, charged toward Ms. Youngquist on the street, and intentionally struck Dex on the head. *Id.* ¶ 65. Ms. Youngquist reported that Dex fell to the ground, bleeding. *Id.* Officer Dos Santos

then proceeded to investigate the incident, and, prior to investigating, told the responding police officer that she would charge Plaintiff with animal cruelty after speaking with him. *Id.* ¶¶ 69–70.

Thereafter, Officer Dos Santos, accompanied by two police officers, went to Plaintiff's home where she interviewed Plaintiff and his wife. *Id.* ¶¶ 72–73. Officer Dos Santos's interview of Plaintiff lasted about four minutes. (ECF No. 3 ¶ 74.) Plaintiff provided his account of the incident. *Id.* ¶¶ 75–76. Plaintiff indicated he had interest in filing a complaint against Ms. Youngquist for her actions. *Id.* ¶ 80. During her interview, Mrs. Mendoza told Officer Dos Santos that multiple cameras captured video footage of the incident, and that such footage would verify the Mendozas' statements, yet Officer Dos Santos refused to review the footage. *Id.* ¶¶ 87–88. Indeed, the video footage revealed several falsehoods in Ms. Youngquist's and Mr. Robey's respective accounts. *Id.* ¶¶ 104–106, 109. Officer Dos Santos also refused to inspect Zoey. *Id.* ¶ 90. Officer Dos Santos then took a statement from Mr. Robey, who reported that he was inside his cousin's home at the time of the incident, but reported an account similar to Ms. Youngquist. (ECF No. 3 ¶¶ 91–93.) Mr. Robey reported that he could not hear what was said. *Id.* ¶ 95.

Officer Dos Santos then prepared an Animal Control report and Application for Statement of Charges, which she did not sign. *Id.* ¶¶ 96, 98. In the report and application, she reported the conflicting statements between the accounts of Ms. Youngquist, on the one hand, and Plaintiff and Plaintiff's wife, on the other. *Id.* However, Officer Dos Santos omitted any reference to available video evidence of the incident that she declined to review, that there were additional witnesses who were not interviewed (the Mendoza children), that she had a personal relationship with Ms. Youngquist, knew Dex and of his past aggression, and that the eyewitness, Mr. Robey, was in another house at the time of the incident and did not hear what had occurred. *Id.* ¶ 98. Officer Dos Santos also did not report any of Plaintiff's statements detailing his justification for his

actions, including his personal and family safety concerns. *Id.* ¶ 77. Officer Dos Santos made those omissions in order to mislead the Commissioner who would review the application to issue criminal charges against Plaintiff for animal abuse and aggravated animal cruelty. (ECF No. 3 ¶ 99.)

Ultimately, Officer Dos Santos's application was not used to request criminal charges against Plaintiff. *Id.* ¶ 128. Instead, Officer Dos Santos had Officer Glenn Johnson, who had no involvement in the investigation, complete two subsequent Application for Statement of Charges, including the final application, which was used to pursue charges (the "Final Application"). *Id.* ¶¶ 129–31. Officers Dos Santos and Johnson "entered into an agreement or understanding, whereby Officer Johnson agreed" to use his position for the gain of Officer Dos Santos and Ms. Youngquist and in furtherance of Defendants' tortious conduct and constitutional attack on Plaintiff. *Id.* ¶¶ 207–08. Officer Johnson submitted the Final Application despite having not been present for the investigation. *Id.* ¶ 136. Instead, Officer Johnson relied on Officer Dos Santos's Animal Control reports and Application for Statement of Charges to complete the Final Application, but Officer Johnson removed Plaintiff's and his wife's accounts of the incident from the Final Application. (ECF No. 3 ¶¶ 138, 140.) The Final Application, like Officer Dos Santos's application, further omitted any reference to Officer Dos Santos's conflict of interest, the availability of corroborating evidence for Plaintiff that was rejected without reason, and that Officer Dos Santos declined to interview six eyewitnesses, instead relying solely on the account of a witness inside a house away from the incident. *Id.* ¶¶ 143–45.

By submitting the Final Application, Officer Johnson affirmed under penalty of perjury that the information was true and correct based on his knowledge, information, and belief. *Id.* ¶ 132. The Final Application sought criminal charges against Plaintiff, as well as a citation for

violation of Anne Arundel County Code § 12-4-902 for having an animal at large.  *Id.* ¶ 148.

Officer Johnson, working with Officer Dos Santos and based on her application, intentionally

misled the Commissioner in finding probable cause by deliberately, or with reckless disregard,

making false statements and omissions that were material to the Commissioner's finding.  *Id.* ¶

149.  As a result, Plaintiff was formally charged with aggravated cruelty to an animal (a felony),

animal cruelty, and having an animal at large.  *Id.* ¶ 150.

After the county Office of the State's Attorney reviewed the video evidence, the State

declined to prosecute Plaintiff for aggravated animal cruelty or animal cruelty.  *Id.* ¶ 159.  The

charges were entered *nolle prosequi.* [2]  (ECF No. 3 ¶ 160.)  Plaintiff then pled guilty to the citation

for having an animal at large from the initial instance when Zoey left the property.  *Id.* ¶ 161.

Prior to the incident, Plaintiff was employed as an Information Technology Specialist with

U.S. Customs and Border Patrol.  *Id.* ¶ 163.  Because of the criminal charges filed against him,

Plaintiff's Top Secret-SCI level security clearance with the federal government, which he had for

over 20 years, was revoked.  *Id.* ¶¶ 164–65.  Relying upon Officer Dos Santos's false Animal

Control reports (which mirrored the Applications for Statement of Charges), the federal

government accused Plaintiff of lack of candor, failure to follow policy, and conduct unbecoming.

*Id.* ¶ 166.  He was then deemed no longer eligible for federal government employment for positions

requiring security clearance status.  *Id.* ¶ 167.

> As a direct and proximate result of Defendants' conduct, Mr.
> Mendoza lost his employment, his security clearance, the
> opportunity for any employment requiring such security clearance,
> and the entire possibility of future employment with the federal
> government, which will always have access to the criminal charges
> against him regardless of their disposition or any expungement
> measures.

---

[2] "A *nolle prosequi* is an official declaration by the State, announcing that it will not pursue the charges in a particular charging document." *In re Darren M.*, 358 Md. 104, 112 (2000).

*Id.* ¶ 169.  He also lost his federal pension, life insurance policy, and healthcare benefits.  (ECF No. 3 ¶ 170.)

On April 24, 2023, Plaintiff filed the underlying action against Defendants in the Circuit Court for Anne Arundel County.  (ECF No. 3.)  Plaintiff alleged eight counts: False Light against all Defendants (Count I); Malicious Prosecution against all Defendants (Count II); Civil Conspiracy against all Defendants (Count III); Violation of Article 24 of the Maryland Declaration of Rights—Substantive and Procedural Due Process against all Defendants (Count IV); Violation of Article 26 of the Maryland Declaration of Rights—Search and Seizure against all Defendants (Count V); Violations of Articles 24 and 26 of the Maryland Declaration of Rights—Unconstitutional Practice, Policy, Custom, and/or Training against the County (Count VI); Violation of 42 U.S.C. § 1983—Substantive and Procedural Due Process (Fourteenth Amendment) against Defendant Officers (Count VII); and Violation of 42 U.S.C. § 1983—Malicious Prosecution and Abuse of Power (Fourth Amendment) against Defendant Officers (Count VIII). *Id.*  Defendants removed the action to this court on May 24, 2023 pursuant to 28 U.S.C. § 1331. (ECF No. 1.)  Subsequently, on May 31, 2023, Defendants filed their Motion dismissal of Plaintiff's Complaint.  (ECF No. 9.)

## II.    LEGAL STANDARD

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56.  "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)." *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022).  Federal Rule of Civil Procedure 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule

56." FED. R. CIV. P. 12(d).  "Pursuant to Rule 12(d), the Court has discretion to determine whether

to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56

motion." *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 WL 5335477, at *3 (D. Md. Sept. 22,

2016) (citations omitted).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for*

*Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013).

"First, all parties must 'be given some indication by the court that it is treating the Rule 12(b)(6)

motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material

outside the pleadings is before the court.'" *Snyder*, 2022 WL 980395, at *4 (quoting *Gay v. Wall*,

761 F.2d 175, 177 (4th Cir. 1985)).  Second, the parties must first "be afforded a reasonable

opportunity for discovery." *Gay*, 761 F.2d at 177.

The present case is in its infancy and there has been no discovery.  Pursuant to Rule 56(d),

Plaintiff, through counsel, has offered a declaration demonstrating that discovery is needed.  (ECF

No. 12-3.)  In light the above, and where, as here, the court need not consider matters outside the

pleading, the court declines to convert the Motion, and will therefore evaluate the Motion as one

to dismiss per Rule 12(b)(6).

**A.  Federal Rule of Civil Procedure 12(b)(6)**

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not

"resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

*Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only

be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and

drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain

that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## III.   <u>ANALYSIS</u>

### A.  Count I: False Light

Defendants contend that Plaintiff's false light claim is barred as a matter of law because it is subject to a one-year statute of limitation.  (ECF No. 9-1 at p. 18–19.)  The court disagrees. "[T]here is a three-year statute of limitations for [the false light] tort." *Watkins v. Washington Post*, No. PWG-17-818, 2018 WL 805394, at *4 (D. Md. Feb. 9, 2018).  "[T]he Maryland statute of limitations is vividly clear." *Allen v. Bethlehem Steel Corp.*, 76 Md. App. 642, 649 (1988). While "[a]n action for libel and slander shall be filed within one year of the date it accrues," "[o]ther tort actions shall be filed within three years of the date they accrue." *Id.*  In *Allen*, the

intermediate appellate court "decline[d] to rewrite" Maryland law "to proscribe the bringing of a false light case after a period of one year." *Id.* Instead, the court concluded, a plaintiff's false light claim is subject to the three-year statute of limitations for tort actions under Section 5-101 of the Courts and Judicial Proceedings Article of the Maryland Code. *Id. See* MD. CODE ANN., CTS. & JUD. PROC. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."). Since the *Allen* decision, this court has repeatedly applied a three-year statute of limitations period to false light claims. *See, e.g., Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 457 (D. Md. 2014) ("[T]he Maryland Court of Special Appeals later rejected the reasoning in *Smith* [*v. Equire, Inc.*]*,* holding that false light claims should be treated like other tort claims and subject to the three year statute of limitations."); *Watkins*, 2018 WL 805394, at *4 (applying a three-year statute of limitations to the plaintiff's false light claims); *Hoai Thanh v. Ngo*, No. CIV. PJM 14-448, 2015 WL 2227923, at *2 (D. Md. May 8, 2015), *aff'd sub nom.*, 694 F. App'x 200 (4th Cir. 2017) (same).

Notwithstanding the straightforward body of law cited above, Defendants rely on *Allen* to advise the court that Plaintiff's false light claim is subject to a one-year statute of limitation. (ECF No. 9-1 at p. 19.) Curiously, Defendants cite to a portion of *Allen* in which the court explicitly and plainly rejects Defendants' contention:

> "We disagree with *Smith.* What the district court judge said in *Smith* may be true, but the Maryland statute of limitations is vividly clear. An action for libel and slander shall be filed within one year of the date it accrues. Other tort actions shall be filed within three years of the date they accrue. Nowhere in § 5–101 does it provide an exception for 'false light' cases."

*Allen*, 76 Md. App. at 649 (citations omitted)).   The law on this is not nuanced; Defendants' argument lacks any merit.  Plaintiff filed his underlying state action on April 24, 2023.  (ECF No. 3.)  Plaintiff's false light claim arises from the statements contained in the Final Application filed on May 4, 2020 (ECF No. 3 ¶ 131.)  Accordingly, Plaintiff's false light claim is timely.

### B.  Count III: Civil Conspiracy

Defendants argue that Plaintiff's claim for civil conspiracy should be dismissed because he has failed to plead any facts "demonstrating any type of understanding or agreement between" Defendant Officers.  (ECF No. 9-1 at p. 22–23.)  "Under Maryland law, civil conspiracy is defined as the 'combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff.'"  *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (quoting *Hoffman v. Stamper,* 385 Md. 1, 24 (2005)).  "Civil conspiracy requires proof of three elements: '1) A confederation of two or more persons by agreement or understanding; 2) [S]ome unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) Actual legal damage resulting to the plaintiff.'"  *Windesheim v. Larocca*, 443 Md. 312, 347 (2015) (quoting *Lloyd v. Gen. Motors Corp.,* 397 Md. 108, 154 (2007)).

Plaintiff may prove a civil conspiracy by circumstantial evidence, "for in most cases it would be practically impossible to prove a conspiracy by means of direct evidence alone." *Hoffman*, 385 Md. at 25 (quoting *Western Md. Dairy v. Chenowith,* 180 Md. 236, 243 (1942)). Indeed, "[c]onspirators do not voluntarily proclaim their purposes; their methods are clandestine. It is sufficient if the proven facts and circumstances, pieced together and considered as a whole,

convince the court that the parties were acting together understandingly in order to accomplish the fraudulent scheme." *Id.* (quoting *Western Md. Dairy,* 180 Md. at 243–44).

> Thus a conspiracy may be established by inference from the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them, and all the surrounding circumstances preceding and attending the culmination of the common design."

*Id.* at 25–26 (quoting *Western Md. Dairy,* 180 Md. at 243–44).

In support of their argument, Defendants cite to this court's decision in *Haley v. Corcoran*, 659 F. Supp. 2d 714, 726 (D. Md. 2009).  (ECF No. 9-1 at p. 22–23.)  In *Haley*, the court dismissed the plaintiffs' civil conspiracy claim because they had failed to allege that the defendants' "agency agreement . . . contemplated tortious conduct." *Id.*  The court does not find *Haley* persuasive here.

Here, Plaintiff alleges that Officer Dos Santos had Officer Johnson file the Final Application with material omissions to conceal her involvement and conflict of interest.   (ECF No. 3 ¶ 129.)  He alleges that Defendant Officers "entered into an agreement or understanding" for Officer Johnson to "defame Plaintiff, place Plaintiff in a false light, fraudulently misrepresent Plaintiff's actions, and/or institute criminal proceedings for criminal charges against Plaintiff without probable cause." *Id.* ¶ 206.  Plaintiff further alleges that Officer Johnson "agreed to use his public position as a sworn officer for the gain of Officer Dos Santos and Sarah Youngquist" in furtherance of the "tortious conduct and constitutional attack against Plaintiff." *Id.* ¶¶ 207–208. Contrary to the allegation in *Haley*, Plaintiff does not rely on an agency relationship between Defendant Officers as the basis of his conspiracy claim, and he is entitled to rely on circumstantial evidence to support his claim.  Following other recent decisions from this court, "[r]ead in the light most favorable to it, the Complaint contains sufficient factual allegations to raise a plausible inference that these individuals shared . . . a 'unity of purpose or a common design,' sufficient to

12

form a conspiracy." *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC.*, 598 F. Supp. 3d 348, 358 (D. Md. 2022). Accordingly, the court concludes that Plaintiff's "allegations are sufficient, at least for the purposes of a motion to dismiss, to show that the Defendants shared a unity of purpose to commit unlawful acts." *Aarow Elec. Sols. v. Tricore Sys., LLC*, — F. Supp. 3d —, No. CV JKB-22-2363, 2023 WL 6161897, at *10 (D. Md. Sept. 21, 2023). Plaintiff has thus stated a plausible claim as to Count III.

### C. Counts IV and VII: Substantive and Procedural Due Process Violations, Article 24 of the Maryland Declaration of Rights and 42 U.S.C. § 1983 (Fourteenth Amendment)

Defendants argue that Plaintiff's Counts IV and VII should be dismissed because, under Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment, Plaintiff does not have a liberty interest in freedom from malicious prosecution pursuant to the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994). (ECF No. 9-1 at p. 26.) Defendants and Plaintiff agree, as does the court, that Counts IV and VII are properly analyzed together. (ECF No. 9-1 at p. 26; ECF No. 12 at p. 22.) *See Dennis v. Bd. of Educ. of Talbot Cnty.*, 21 F. Supp. 3d 497, 507 (D. Md. 2014) ("Much like the Fourteenth Amendment, Article 24 protects an individual's procedural due process interest. As such, Maryland courts have long equated the Due Process Clause and Article 24." (citations omitted)).

As a preliminary matter, 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  Section 1983 creates a private right of action but does not create a substantive right; rather, § 1983 creates "a method for vindicating federal rights elsewhere conferred." *Albright*, 510 U.S. at 271.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. AMEND. XIV, § 1.  Moreover, Article 24 of the Maryland Declaration of Rights provides that no person "ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."  MD. CONST. DECL. OF RTS. ART. 24.  A liberty interest "denotes not merely freedom from bodily restraint" but also the right to "engage in any of the common occupations of life." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).  "A property interest exists when one has a legitimate claim of entitlement to a right arising from such sources as state statutes, local ordinances, and employment contracts."  *Bailey-El v. Housing Authority of Balt. City*, 686 F. App'x 228, 229 (4th Cir. 2017)  (quoting *Bunting v. City of Columbia*, 639 F.2d 1090, 1093 (4th Cir. 1981)).  Notably, in *Albright*, the Supreme Court concluded that there is no liberty interest in freedom from malicious prosecution.  510 U.S. at 273–74; *see Glass v. Anne Arundel Cnty.*, No. CIV. WDQ-12-1901, 2013 WL 1120549, at *7 (D. Md. Mar. 14, 2013) (discussing *Albright*). While "[f]abrication of evidence alone is insufficient to state a claim for a due process violation," a plaintiff may state a claim where he pleads "adequate facts to establish that the loss of liberty— *i.e.,* his conviction and subsequent incarceration—resulted from the fabrication."  *Massey v. Ojaniit*, 759 F.3d 343, 354 (4th Cir. 2014).

"The Due Process Clause does not constitute a catch-all provision that provides a remedy whenever a state actor causes harm." *Evans v. Chalmers*, 703 F.3d 636, 647 n.2 (4th Cir. 2012). "In order to claim entitlement to the protections of the due process clause—either substantive or procedural—a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been deprived of that protected interest by some form of state action." *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) (citations omitted)); *see Bailey-El*, 686 F. App'x at 229 (explaining that "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty."). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." *Stone*, 855 F.2d at 172.

In the case at bar, Plaintiff's due process claims are rooted in the allegation that "Defendants had no lawful justification for the criminal charges they initiated, sought, and pursued against Plaintiff," and are thus more properly analyzed under the Fourth Amendment. (ECF No. 3 ¶ 218.) *See Humbert v. Mayor & City Council of Balt. City*, 866 F.3d 546, 555 (4th Cir. 2017), *as amended* (Aug. 22, 2017) ("[A]llegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued— e.g., post-indictment or arraignment—are considered a § 1983 malicious prosecution claim." (citations omitted)); *Bradley v. Balt. Police Dep't*, No. CV CCB-22-641, 2023 WL 6381442, at *4 (D. Md. Sept. 28, 2023) ("Though presented as due process claims, Counts I and II of Bradley's amended complaint alleges violations of the Fourth Amendment and will be analyzed under that Amendment's doctrine."); *Osborne v. Georgiades*, No. CV RDB-14-182, 2017 WL 3978485, at

*6 (D. Md. Sept. 11, 2017), *aff'd,* 778 F. App'x 220 (4th Cir. 2019) (rejecting the plaintiff's attempt to frame his claim of fabricated evidence and detention as a Fourteenth Amendment violation).

In his response to the Motion, Plaintiff argues that his liberty and property rights of which Defendants deprived him are his employment, security clearance, freedom to take advantage of other employment opportunities, good name and reputation, among others.  (ECF No. 12-1 at p. 23; ECF No. 3 ¶¶ 220, 257.)   Plaintiff does not claim that Defendants directly took action to terminate his employment or revoke his security clearance.  *See Stone*, 855 F.2d at 172, *supra*. *Cf. Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314–15 (4th Cir. 2012) ("[T]he Court has repeatedly admonished judges to be wary of turning the Due Process Clause into a font of tort law by permitting plaintiffs to constitutionalize state tort claims through artful pleading. . . . [I]njury to reputation by itself [is] not a 'liberty' interest protected under the [Due Process Clause]." (citations omitted)).  The purported state action and deprivation(s) of which Plaintiff complains instead relate to the submission and institution of proceedings without probable cause.  Such claims are properly analyzed under the Fourth Amendment. *See Albright*, 510 U.S. at 273, *supra*.

Even taken as true, the court is not persuaded that the causal connection between Defendants' alleged actions and the losses and injuries of which Plaintiff complains constitutes a plausibly pled claim for relief under the Fourteenth Amendment and Article 24.  *See Albright*, 510 U.S. at 273 ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'"); *Smith v. Travelpiece*, 31 F.4th 878, 884 (4th Cir. 2022) ("When an officer improperly obtains a search warrant using deceptive falsities or omissions and uses that ill-gotten warrant to search and seize property, the Fourth Amendment's right to be free from unreasonable searches and seizures

is violated.").  Accordingly, the court concludes that Plaintiff has failed to state a claim for relief

alleging due process violations under Article 24 of the Maryland Declaration of Rights and 42

U.S.C. § 1983 (Fourteenth Amendment).  Counts IV and VII will therefore be dismissed.

### D.  Count VI: Violation of Articles 24 and 26 of Maryland Declaration of Rights (*Longtin* Claim)

Defendants next argue that Plaintiff's Count VI should be dismissed because he has failed

to allege that Defendant Officers' actions were premised on an unconstitutional policy, practice,

or custom of the County.  (ECF No. 9-1 at p. 29.)  "[T]he Maryland Constitution recognizes a

'pattern or practice' claim as part of its protections of citizens against unconstitutional actions of

local government and its employees." *Prince George's Cnty. v. Longtin*, 419 Md. 450, 500 (2011).

Such a claim, referred to as a *Longtin* claim, is "[t]he state analogue to a *Monell* claim." *Palma v.

Montgomery Cnty., Maryland*, 598 F. Supp. 3d 288, 297 n.5 (D. Md. 2022); *see Devi v. Prince

George's Cnty.*, No. CV DKC 16-3790, 2017 WL 3592452, at *4 (D. Md. Aug. 21, 2017)

("Maryland, like the federal government, imposes liability on municipalities for widespread

patterns or practices that cause constitutional injuries." (citations omitted)).  This court routinely

analyzes *Longtin* and *Monell* claims together.[3]  *See, e.g.*, *Talley v. Anne Arundel Cnty., Maryland*,

No. CV RDB-21-347, 2021 WL 4244759, at *13–14 (D. Md. Sept. 17, 2021); *Grim v. Balt. Police

Dep't*, No. CV ELH-18-3864, 2019 WL 5865561, at *26 (D. Md. Nov. 8, 2019); *Devi*, 2017 WL

3592452, at *4.

In asserting a *Monell* pattern-or-practice claim (and thus a *Longtin* claim), Plaintiff must

"adequately plead . . . the existence of an official policy or custom that is fairly attributable to the

municipality and that proximately caused the deprivation of their rights."  *Jordan by Jordan v.

---

[3] The claims are distinct, however, in that "Maryland law imposes respondeat superior liability on municipalities for the State constitutional violations of its employees," while *Monell* claims do not.  *Grim*, 2019 WL 5865561, at *26.

*Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).  Such claims consist of two components: "(1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights."  *Burley v. Balt. Police Dep't*, 422 F. Supp. 3d 986, 1015 (D. Md. 2019) (citing *Bd. of Comm'rs of Bryan Cnty., v. Brown*, 520 U.S. 397, 403 (1997)).  A policy or custom that purports to give rise to liability will  "not, however, 'be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees.'"  *Id.* (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984)).  The municipality's conduct must demonstrate "'deliberate indifference' to the rights of its inhabitants."  *Id.* (quoting *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997)).

A plaintiff may allege four types of policies, customs, or practices for which a municipality may be held liable:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter*, 164 F.3d at 217).

While it is true that often "a plaintiff lacks specific details regarding the municipal actor's internal policies and training procedures before discovery" and that "courts should not expect the plaintiff to possess a rich set of facts concerning the allegedly unconstitutional policy and the responsible policymakers," "boilerplate allegations will not suffice."  *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 556–57 (D. Md. 2021); *accord Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 403 (4th Cir. 2014) ("Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier.  For to survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege facts which, if true, state a claim to relief that

is *plausible* on its face.  The recitation of facts need not be particularly detailed, and the chance of success need not be particularly high.  A plaintiff fails to state a claim only when he offers labels and conclusions or formulaically recites the elements of his § 1983 cause of action." (citations omitted)).

On the pleading requirements of such claims, the court finds the analysis in *Talley v. Anne Arundel County, Maryland*, instructive:

> Plaintiff offers several barebones assertions of an express policy, approval by county decisionmakers, or inadequate police training. These allegations are insufficiently pled to survive a motion to dismiss.

> Plaintiff's strongest claim is that the County has "permitted and tolerated a pattern and practice of unjustified, unreasonable, and unlawful abuse[ ]" that is "so widespread as to rise to the level of official policy promulgated by Anne Arundel County." To state a *Monell* claim based on condonation, a plaintiff must "point to a 'persistent and widespread practice of municipal officials', the 'duration and frequency' of which indicate that policymakers (1) had actual and constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Owens v. Balt. City State's Atty's Office*, 767 F.3d 379, 402 (4th Cir. 2014) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1386–91 (1987)). "Both knowledge and indifference can be inferred from the 'extent' of employees' misconduct." *Id.*

> Alleging such a practice requires a plaintiff to plead prior instances of similar conduct. *See Longtin*, 419 Md. at 497 (pointing to plaintiff's "multitudinous evidence that his experience was not an isolated incident"). In *Chestnut v. Kincaid*, No. RDB-20-2342, 2021 WL 1662469 (D. Md. Apr. 28, 2021), plaintiffs wrongfully convicted of felony murder brought a *Monell* claim against the Baltimore Police Department, alleging a policy of fabricating and suppressing evidence in murder trials. 2021 WL 1662469, at **5, 15–16. The complaint detailed "extensive factual allegations" of "numerous deficient investigations" featuring "fabrication of evidence through coercion and threats and the suppression of

exculpatory evidence." *Id.* at **2–5, 16. This Court denied BPD's motion to dismiss, reasoning that these allegations painted "a disturbing picture of a police department that turned a blind eye to the suppression of exculpatory evidence by its officers in murder investigations." *Id.* at **15–16. Similarly, in *Owens v. Baltimore City State's Atty's Office*, 767 F.3d 379 (4th Cir. 2014), the Fourth Circuit reversed this Court's grant of BPD's motion to dismiss a complaint that alleged multiple "[r]eported and unreported cases" and "numerous 'successful motions'" to evidence a custom of "knowingly and repeatedly suppressing exculpatory evidence in criminal prosecutions." 767 F.3d at 403. Although the complaint did not cite any of these cases, the Fourth Circuit noted that the "brief, but non-conclusory" allegations of these cases and motions, "if true, would buttress [plaintiff's] legal conclusion." *Id.*

Plaintiff's Amended Complaint nowhere approaches the detail offered in these cases. Plaintiff alleges that the County maintained a policy "of violating the constitutional rights of people in the County to be free from malicious prosecution in violation of the 4th and 14th Amendments" by "maliciously pursuing prosecution without probable cause, failing to conduct full and complete investigations, and routinely ignoring exculpatory evidence." Nevertheless, he fails to plead that this conduct is sufficiently "frequent" and "widespread" to establish a tacit policy by condonation. *Cf. Owens*, 767 F.3d at 402. He offers only four examples from the past twenty-five years, only two of which involved conduct even remotely similar to the suppression of evidence and coercive interrogation techniques that caused the alleged injuries in the present case. (*Id.* ¶ 180.) These claims fall short of the volume of cases alleged in *Owens*, and nowhere approach the "extensive factual allegations" provided in *Chestnut*. Without sufficient allegations that Plaintiff's treatment is anything more than an "isolated incident," see *Longtin*, 419 Md. at 497, Plaintiff fails to state a claim for *Monell* and *Longtin* liability against Anne Arundel County.

No. CV RDB-21-347, 2021 WL 4244759, at *13–14 (D. Md. Sept. 17, 2021) (record citations and footnote omitted).

Here, similar to *Talley*, Plaintiff's allegations to support his *Longtin* claim focus on a single, isolated incident and are supplemented by threadbare and conclusory allegations of a county-wide custom, policy, or practice.  In support of his *Longtin* claim, Plaintiff alleges:

> 244. . . . [T]he County committed a separate and distinct violation of Plaintiff's constitutional rights by authorizing, permitting, and/or allowing the officers to be assigned to a case with which they have a conflict of interest, to refuse readily available evidence despite notice of its exculpatory value, to conspire to bring the criminal charges against him, to apply for criminal charges without probable cause, to apply for criminal charges despite failing to review or obtain readily available despite notice of its exculpatory value, to apply for criminal charges by asserting or relying on information known to be false or which reasonably should have been known to be false, to permit and conceal a conflict of interest while conducting and taking the lead of an investigation, and to abuse one's position as a law enforcement for personal motive or animus.

> 245. On information and belief, Anne Arundel County officers are trained, authorized, and/or permitted to investigate a dispute involving their associates.

> 246. On information and belief, Anne Arundel County officers are trained, authorized, and/or permitted to apply for criminal charges without probable cause and/or to take actions to abuse their position as law enforcement officers, including those described above.

> 247. On information and belief, Anne Arundel County officers are trained, authorized, and/or permitted to use their position as an officer for their own private gain and/or the gain of another person.

(ECF No. 3 ¶¶ 244–47.)

Plaintiff does not allege previous instances of similar conduct, *see Talley*, 2021 WL 4244759, at *13–14, *supra*, and instead bases his claim on a single incident and conclusory allegations that fail to identify facts to support the allegation that the County had an unconstitutional policy or custom.  Plaintiff is certainly not obligated to plead specific details of Defendants' purported policies or training procedures, *Saltz*, 538 F. Supp. 3d at 556–57, but he still must allege a practice indicated by, or through reference to, previous instances of similar

conduct. *Talley*, 2021 WL 4244759, at *14. Because Plaintiff has failed to do so, Count VI must be dismissed.

### E.  Probable Cause

The court's remaining analysis with respect to Defendants' Motion is informed by its determination of whether Plaintiff has asserted facts asserting that Defendants lacked probable cause for their actions against Plaintiff.  "Probable cause . . . is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Henderson v. Simms*, 223 F.3d 267, 271 (4th Cir. 2000) (quoting *Gerstein v. Pugh,* 420 U.S. 103, 111 (1975)).  It is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  "Probable cause 'is not a high bar.'" *Dist. of Columbia v. Wesby*, 583 U.S. 48, 57 (2018).  "Probable cause is 'a probability or substantial chance of criminal activity, not an actual showing of such activity,' and it is assessed based on the totality of the circumstances."  *Nero v. Mosby*, 890 F. 3d 106, 130 (4th Cir. 2018) (quoting *Gates*, 462 U.S. at 230).

While probable cause "does not require officers to rule out a suspect's innocent explanation for suspicious facts," *Wesby*, 583 U.S. at 61, "an officer may not disregard readily available exculpatory evidence of which he is aware." *Wadkins v. Arnold,* 214 F.3d 535, 541 (4th Cir. 2000).  To the extent Plaintiff takes issue with the information contained in the Final Application, Plaintiff "cannot challenge a probable-cause affidavit, such as an application for Statement of Charges, unless [he] shows that the affiant 'knowingly and intentionally, or with reckless disregard for the truth,' included a 'false statement.'"  *Nero v. Mosby*, 890 F.3d 106, 128 (4th Cir. 2018) (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).  The Fourth Circuit has explained:

> "Reckless disregard" can be established by evidence that an officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.  With respect to omissions, "reckless disregard" can be established by evidence that a police officer failed to inform the judicial officer of facts [he] knew would negate probable cause."  A plaintiff's allegations of negligence or innocent mistake by a police officer will *not* provide a basis for a constitutional violation.

*Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 627–28 (4th Cir. 2007) (citations omitted).

"[A] plaintiff must demonstrate that the false statement or omission is material, that is, necessary to the [neutral and disinterested magistrate's] finding of probable cause."  *Humbert*, 866 F.3d at 556 (citations omitted).   "To determine materiality, the Court must excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause."  *Id.*  (citations omitted).  In *Talley*, the court found that the plaintiff had pled material omissions where she claimed that "the Application for Statement of Charges [was] based on cherry-picked information with glaring omissions, misleading statements, and outright inaccuracies," and the officer "failed to disclose exculpatory facts to judicial officers, prosecutors, and other decision makers."  2021 WL 4244759, at *8–9.

Here, Plaintiff alleges that Defendants lacked probable cause to file charges and institute proceedings against him because Defendant Officers willfully made material omissions in the Final Application (based on Officer Dos Santos's Draft Application for Statement of Charges).  (ECF No. 12-1 at p. 12.)  Plaintiff alleges that the Final Application materially omitted information and statements provided by Plaintiff and his wife (an eyewitness to the incident), including Plaintiff's explanation for his actions.  (ECF No. 3 ¶ 141.)  Plaintiff further alleges that Defendant

Officers declined to interview either of Plaintiff's children who were also eyewitnesses to the incident. *Id.* Most glaringly, Plaintiff alleges that Defendant Officers declined to review video evidence of the incident that would have, as Plaintiff avers, corroborated Plaintiff's account and disproven Ms. Youngquist's account. *Id.* Such allegations sufficiently allege that Defendant Officers acted knowingly or with reckless disregard in their failure to investigate readily available (and offered) exculpatory evidence, and subsequently failed to disclose that fact and others to the reviewing decisionmaker. *See Talley*, 2021 WL 4244759, at *8–9, *supra*. Accordingly, the court finds that Plaintiff has pled sufficient facts to allege that Defendants lacked probable cause for the proceedings initiated by the Final Application.

### 1. Count II: Malicious Prosecution

Defendants contend that Plaintiff's claim for malicious prosecution must be dismissed because 1) he has failed to allege malice by Defendant Officers; 2) the evidence supports a finding of probable cause; and 3) entry of a *nolle prosequi* is not evidence of innocence. (ECF No. 9-1 at p. 20–21.) "Malicious prosecution is a tort that allows individuals to recover damages from those 'who had initiated or caused the initiation of criminal proceedings despite having no good reason to believe that criminal charges were justified by the facts and the law.'" *Litchfield v. Rinehart*, No. CV GLR-21-2101, 2022 WL 3716525, at *7 (D. Md. Aug. 29, 2022) (quoting *Thompson v. Clark*, 596 U.S. 36, 43 (2022)). Under Maryland law, malicious prosecution includes four elements: "1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceedings in favor of the plaintiff." *Heron v. Strader*, 361 Md. 258, 264 (2000). The Maryland common law elements are similar to the elements for a malicious

prosecution claim brought pursuant to a Fourth Amendment § 1983 claim. *Litchfield v. Rinehart*, No. CV GLR-21-2101, 2022 WL 3716525, at *7 (D. Md. Aug. 29, 2022).

Notably, the malice element "may be inferred from the lack of probable cause." *DiPino v. Davis*, 354 Md. 18, 55 (1999). This court has previously concluded that, where a plaintiff successfully pled state action without probable cause, he was entitled "to a rebuttable inference of malice under Maryland law." *Talley*, 2021 WL 4244759, at *12. The final element requires that proceedings were terminated in Plaintiff's favor, including a *nolle prosequi*; but Plaintiff need not show "that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

The court's preceding analysis with respect to probable cause applies here. The analysis is further supported by Plaintiff's allegations that Defendant Officers acted with ill will and malice in making their material omissions in the Final Application. (ECF No. 3 ¶¶ 187–203.) As such, Plaintiff has sufficiently pled facts to support the second and third elements of his malicious prosecution claim. The only remaining question posed by Defendants is whether Plaintiff has sufficiently alleged that proceedings terminated in his favor. In light of the Supreme Court's decision in *Thompson*, the court concludes that Plaintiff has sufficiently alleged this element. *See* 596 U.S. at 49, *supra*. Plaintiff states that the criminal charges for animal cruelty that resulted from the Final Application were entered as *nolle prosequi*, and that Plaintiff pled guilty only to a citation for having an "animal at large." (ECF No. 3 at p. 3, n.3.) The court is not persuaded that the proceedings did not terminate in Plaintiff's favor solely because he pled guilty to a citation offense of having an animal at large. Plaintiff's criminal charges for animal cruelty, including the felony charge, were separate and distinct from the citation, involve drastically different legal elements, and the events occurred at different times. The court also notes that Plaintiff does not

25

include the citation as a basis of his malicious prosecution claim.  Accordingly, the court concludes that Plaintiff has stated a plausible claim of common law malicious prosecution.

> **2. Counts V and VIII: Search and Seizure Violation, Article 26 of the Maryland Declaration of Rights, and Malicious Prosecution and Abuse of Power Violation, 42 U.S.C. § 1983 (Fourth Amendment)**

In Counts V and VIII, Plaintiff alleges that Defendants violated his rights to freedom from unlawful search and seizure, freedom from malicious prosecution, and freedom from abuse of power by police. (ECF No. 3 ¶¶ 225–40, 263–77.)  Defendants seek to dismiss these claims, arguing that the alleged misrepresentations and omissions in the Final Application did not violate Plaintiff's rights under Article 26 of the Maryland Declaration of Rights and the Fourth Amendment, because criminal proceedings did not terminate in Plaintiff's favor and because Plaintiff was seized pursuant to probable cause. (ECF No. 9-1 at p. 24.).  Defendants and Plaintiff agree, as does the court, that Counts V and VIII are properly analyzed together. (ECF No. 9-1 at p. 23–27; ECF No. 12 at p. 21.)  *See Stutzman v. Krenik*, 350 F. Supp. 3d 366, 377 (D. Md. 2018) ("Maryland courts construe Article 26 *in pari materia* with the Fourth Amendment, such that its comparable provisions are essentially equated to the Fourth Amendment's protections against unreasonable searches and seizures.").

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Id.* (quoting U.S. CONST. AMEND. IV.).  Article 26 of the Maryland Declaration of Rights provides that "all warrants, without oath or affirmation, . . . to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted." MD. CONST. DECL. OF RTS. ART. 26.  A "seizure" of a person must be "reasonable under the

circumstances" to comply with the Fourth Amendment. *Stutzman*, 350 F. Supp. 3d at 377 (quoting *Wesby*, 583 U.S. at 56). "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183 (4th Cir. 1996). Thus, the allegation that a plaintiff was seized pursuant to a legal process unsupported by probable cause, and where, in the case of malicious prosecution, proceedings terminate in the plaintiff's failure, violates the Fourth Amendment. *Id.* at 183–84.

The court's analysis with respect to probable cause, *supra,* provides the framework of its analysis here. Because the court concludes that Plaintiff has plausibly alleged that Defendants lacked probable cause to initiated proceedings against him based on the material omissions in the Final Application, Plaintiff has similarly alleged a plausible claim for relief under the Fourth Amendment and Article 26 of the Maryland Declaration of Rights. Moreover, to the extent these claims rely on allegations of malicious prosecution, the court's analysis in Section III.E.1 applies. *See Talley*, 2021 WL 4244759, at *10 ("Articles 24 and 26 of the Maryland Declaration of Rights are construed *in pari materia* with the Fourth and Fourteenth Amendments, the elements of malicious prosecution and the standard for probable cause are identical to the federal constitutional claim." (citations omitted)). Accordingly, Plaintiff has sufficiently stated a claim for relief under Article 26 of the Maryland Declaration of Rights and a Fourth Amendment violation under 42 U.S.C. § 1983.

## F.  Immunity Doctrines

### 1.  Governmental Immunity[4]

Defendants contend that the County should be dismissed as a defendant with regard to Plaintiff's state claims, Counts I through V,[5] because it is entitled to governmental immunity. (ECF No. 9-1 at p. 12–16.)  "Under Maryland law, counties enjoy governmental immunity from tort liability with respect to 'nonconstitutional torts based on activity categorized as governmental.'"  *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 378 (D. Md. 2011) (quoting *Housing Auth. of Balt. City v. Bennett,* 359 Md. 356 (2000)).  The state's right, and by extension, the right of the County, "to governmental immunity is 'deeply ingrained in Maryland law' and may not be waived in the absence of express or implied statutory authorization." *Devi*, 2017 WL 3592452, at *2 (quoting *Nam*, 127 Md. App. 172, 182); *see also Boyd*, 2019 WL 1440876, at *35 ("[A] municipality, such as the County, is also entitled to governmental immunity.").

"A local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity."  *DiPino*, 354 Md. at 47.  "Maryland law does not waive the counties' governmental immunity from tort liability" under the Maryland Local Government Tort Claims Act ("LGTCA"); rather, the LGTCA "requires each county to provide limited indemnity to county employees for non-malicious tortious acts or omissions committed in the employees' scope of employment."  *Id.*  Enactment of the LGTCA "sought to provide 'a remedy for those injured by local government officers and employees, acting without malice in the scope of their employment,

---

[4] Defendants argue that the County is entitled to immunity as to Plaintiff's 42 U.S.C. § 1983 claims.  (ECF No. 9-1 at p. 16.)  Plaintiff, however, did not bring federal constitutional claims against the County.  (ECF No. 3 ¶¶ 252–77.)
[5] Because the court will dismiss Count IV for failure to state a claim, there is no need for an immunity analysis, but the court will address immunity with respect to Plaintiff's remaining state constitutional claim.

while ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public officials' acts.'" *Mendygral v. Mayor and City Council of Ocean City*, No. CV ELH-21-1381, 2022 WL 125275, at *7 (D. Md. Jan. 13, 2022) (quoting *Rios v. Montgomery Cnty.*, 157 Md. App. 462, 475-76 (2004)).

"The LGTCA provides local government employees an 'indirect statutory qualified immunity,'" but it does not "authorize suit against the local government for its employee's actions." *Holloway-Johnson v. Beall*, 220 Md. App. 195, 207–208 (2014), *aff'd in part, rev'd in part,* 446 Md. 48 (2016); *see Beall v. Holloway-Johnson*, 446 Md. 48, 76–77 (2016) ("[T]he LGTCA does not allow a plaintiff to bring suit directly against the local government."); *Williams v. Maynard*, 359 Md. 379, 394 (2000) ("[T]he LGTCA does not waive governmental immunity or otherwise authorize any actions directly against local governments."); *Nam v. Montgomery Cnty.*, 127 Md. App. 172, 184 (1999) ("Nowhere in the Act, however, is there a waiver of immunity so that the governmental entity is subject to being made a party to an action based upon its employee's or agent's tortious acts.  The governmental entity's liability is analogous to a public liability policy on an automobile.  The insurance company is liable for such damages as its assured may inflict, but, generally speaking, the insurance company is not an entity which may be sued for its assured's torts."); *Hicks v. Anne Arundel Cnty.*, No. CV JKB-20-0022, 2020 WL 7624773, at *5 (D. Md. Dec. 22, 2020) ("A Maryland statute provides that local governments may be vicariously liable for the tortious acts or omissions of their employees, but this statute contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity." (citations omitted)); *Boyd v. Armstrong*, No. CV ELH-17-2849, 2019 WL 1440876, at *35 (D. Md. Mar. 29, 2019) ("[T]he LGTCA does not permit plaintiffs to name the County directly in a common law tort suit.").  This court has previously concluded that governmental immunity applies even where

the plaintiff alleged theories of negligence in training and supervision and *respondeat superior* liability. *Cooper v. Doyle*, No. CV DKC 22-0052, 2022 WL 16923857, at *4–5 (D. Md. Nov. 14, 2022)

However, "[u]nlike in a § 1983 action and unlike in an action for some common law torts, neither the local government official nor a local governmental entity has available any governmental immunity in an action based on rights protected by the State Constitution." *DiPino*, 354 Md. at 51. "Maryland law provides no immunity for municipalities and other local government entities from suits based upon violations of state constitutional rights." *Ashton v. Brown*, 339 Md. 70, 101 (1995); *see Rounds v. Maryland-Nat. Cap. Park & Plan. Comm'n*, 441 Md. 621, 637 n.13 (2015) ("As in the present case, where a local government has been sued for violations of citizens' constitutional rights, under Maryland common law "there is ordinarily no local government immunity." (citations omitted)); *Payne v. City of Laurel, Md.*, No. CV RDB-07-583, 2008 WL 11363692, at *8 (D. Md. Feb. 19, 2008 ("Maryland law provides no immunity for municipalities and other local government entities from suits based upon violations of state constitutional rights . . . . Thus, the [City] is not immune from Count X, which alleges that Officer Payne's rights were violated under Maryland's Constitution." (citations omitted)). This court has regularly declined to find that immunity barred suit against a municipal defendant where the allegations concerned state constitutional violations. *See, e.g.*, *Cooper v. Doyle*, No. CV DKC 22-0052, 2022 WL 16923857, at *6 (D. Md. Nov. 14, 2022); *Thomas v. Maryland*, No. GJH-17-1739, 2017 WL 6547733, at *8 (D. Md. Dec. 20, 2017); *Wagner v. Gibson*, No. CIV. WDQ-12-3581, 2013 WL 4775380, at *9 (D. Md. Sept. 4, 2013).

Here, Defendants do not dispute that the County is liable should judgment be entered against Defendant Officers for actions arising from the scope(s) of their employment. (ECF No.

9-1 at p.15.)  The court agrees that the County is entitled to immunity as to Plaintiff's Counts I through III, as these are common law tort actions for which the LGTCA has not waived such immunity.  *See Williams*, 359 Md. at 394, *supra*.  The fact that Plaintiff named the County as a defendant under a theory of *respondeat superior* does not change this outcome.  *See Cooper*, 2022 WL 16923857, at **4–5, *supra*; *see also Mendygral*, 2022 WL 125275, at *7 (holding in a case where the plaintiff brought suit against the city under a theory of *respondeat superior* that "the LGTCA does not waive governmental immunity or otherwise authorize any actions directly against local governments" (citations omitted)).  Because governmental immunity does not extend to claims of violations of state constitutional rights, however, *see DiPino*, 354 Md. at 51, *supra*, the court declines to dismiss the County as a Defendant in Plaintiff's remaining state constitutional claim.  Accordingly, the court will dismiss Counts I through III against the County but will deny Defendants' Motion to the extent it seeks dismissal of Count V as against the County.

### 2. *Defendant Officers' Immunity*

Defendants finally contend that Defendant Officers are entitled to qualified immunity on Plaintiff's state intentional tort and constitutional claims (Counts I through V), and on Plaintiff's federal constitutional claims (Counts VII and VIII).  (ECF No. 9-1 at p. 12.)

Maryland Public Official Immunity[6]

"Maryland courts have long recognized the common law doctrine of public official immunity."  *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 297 (D. Md. 2020).  The doctrine is "quite limited and is generally applicable only in negligence actions or defamation actions based

---

[6] Defendants appear to rely on the doctrine of qualified immunity under federal law, not state law, to assert that Defendant Officers are entitled to immunity—although it is unclear on which claims they intend to seek immunity. (ECF No. 9-1 at p. 16–17.)  Qualified immunity under federal law is not applicable to Plaintiff's state law claims.  *See Borzilleri v. Mosby*, 189 F. Supp. 3d 551, 560 n.4 (D. Md. 2016), *aff'd*, 874 F.3d 187 (4th Cir. 2017) ("[U]nder Maryland law, federal qualified immunity is not a defense for state constitutional torts.").

on allegedly negligent conduct." *Lee v. Cline*, 384 Md. 245, 258–60 (2004) (citing cases). The Maryland Supreme Court "has consistently held that Maryland common law qualified immunity in tort suits, for public *officials* performing *discretionary* acts, has no application in tort actions based upon alleged violations of state constitutional rights or tort actions based upon most so-called 'intentional torts.'" *Id.* at 258 (emphasis in original).

The doctrine of Maryland public official immunity is not applicable to Plaintiff's intentional tort and state constitutional claims. *See Lee*, 384 Md. at 258–60, *supra*. Beyond that, each of Plaintiff's state law claims contain allegations that Defendant Officers acted "with ill will and actual malice." (ECF No. 3 ¶¶ 184, 202, 212, 223, 239.) Accordingly, the court concludes that Defendants have failed to show that Defendant Officers are entitled to public official immunity under Maryland common law.

Federal Qualified Immunity

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Wesby*, 583 U.S. at 62–63 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A government official sued in his individual capacity may invoke the protection afforded by qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their

duties reasonably." *Id.*  Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987) (quoting *Harlow,* 457 U.S. at 817).  If the court determines that a government official took action that a reasonable officer would have believed was lawful, the official is entitled to dismissal before discovery. *Id.*  While "[a] qualified immunity defense can be presented in a Rule 12(b)(6) motion, . . . when asserted at this early stage in the proceedings, 'the defense faces a formidable hurdle' and 'is usually not successful.'" *Owens*, 767 F.3d at 396 (4th Cir. 2014) (quoting *Field Day, LLC v. Cnty. of Suffolk,* 463 F.3d 167, 191–92 (2d Cir. 2006)).

"Determining whether qualified immunity is appropriate is a two-step inquiry." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (citing *Pearson*, 555 U.S. at 232).  "[T]he court must examine (1) whether the facts illustrate that the officer violated the plaintiff's constitutional right to be free from unreasonable seizures, and (2) whether the right was clearly established at the time of the alleged event such that 'a reasonable officer would have understood that his conduct violated the asserted right.'" *Humbert*, 866 F.3d at 555 (quoting *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007)).  "The answer to both questions must be in the affirmative to defeat the officer's entitlement to immunity." *Id.*  Stated differently, "[r]uling on a defense of qualified immunity therefore requires (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate that right." *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.

1992).  "The first two of these present pure questions of law for the courts."  *Id.* (citing *Harlow*, 457 U.S. at 818).

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson*, 483 U.S. at 640).  "[I]n the light of pre-existing law the unlawfulness must be apparent."  *Id.* (quoting *Anderson*, 483 U.S. at 640).  "The 'salient question' is whether the state of the law at the time of the events in question gave the officials 'fair warning' that their conduct was unconstitutional."  *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006) (quoting *Hope*, 536 U.S. at 741).  The Fourth Circuit further explained:

> Because we have determined that the Officers lacked probable cause to seize Humbert, we must next examine whether instituting criminal process against him violated a clearly established rule. The Officers argue that a reasonable person in the Officers' positions would not have known that his or her actions violated a clearly established right.
>
> Certainly, the Fourth Amendment right to be seized only on probable cause was clearly established at the time of the events at issue here.   The law made clear that arresting and initiating legal process against a person without probable cause amounts to a seizure in violation of the Fourth Amendment.  Additionally, it was clearly established that the Constitution did not permit a police officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause. The objective standard for qualified immunity accommodates the allegation of falsity or material omissions because a reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by [stated or omitted facts] that the officer knows or should know are false [or would negate probable cause].

*Humbert*, 866 F.3d at 561–62 (citations omitted).

The cornerstone of Defendants' argument that Defendant Officers are entitled to qualified immunity is that the Applications for Statement of Charges were "supported by probable cause." (ECF No. 9-1 at p. 18.)  Defendants' contention is contrary to the court's analysis with respect to probable cause, *supra*.  Plaintiff has set forth ample facts to allege plausibly that Defendants lacked probable cause to institute proceedings against him because Defendant Officers willfully made material omissions the Applications for Statement of Charges.  And here, as in *Humbert*, Plaintiff's "Fourth Amendment right to be seized only on probable cause was clearly established at the time of the events at issue here," "[t]he law made clear that . . . initiating legal process against a person without probable cause amounts to a seizure in violation of the Fourth Amendment," and "it was clearly established that the Constitution did not permit a[n] [officer] deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause."  *See Humbert* 866 F.3d at 561–62, *supra*. Accordingly, Defendants have not met their burden to show at this early stage that Defendant Officers are entitled to qualified immunity.

### 3. <u>CONCLUSION</u>

For the reasons set forth herein, by separate order, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 9), construed as a motion to dismiss, will be GRANTED IN PART AND DENIED IN PART.[7]  The Motion will be granted as to Counts IV, VI, and VII; granted as to Counts I through III against Defendant County; denied as to Counts I through III against Defendant Officers; and denied as to Counts V and VIII.  For the sake of clarity, the counts and Defendants that will remain are as follows:

---

[7] Defendants seem to seek dismissal with prejudice on some counts in the Complaint, although the request is unclear. (ECF No. 9 at p. 2.)  The court declines at this time to dismiss any counts with prejudice.  *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court").

Count I: False Light against Defendant Officers
Count II: Malicious Prosecution against Defendant Officers
Count III: Civil Conspiracy against Defendant Officers
Count IV: Violation of Article 26 of the Maryland Declaration of
Rights—Search and Seizure—against all Defendants (Defendant
Officers and Defendant County)
Count VIII: Violation of 42 U.S.C. § 1983—Malicious Prosecution
and Abuse of Power against Defendant Officers

March 22, 2024

/S/
_____

Julie R. Rubin
United States District Judge